# Richmond

## ARCHER CONRAD HUDDLESTON v. COMMONWEALTH OF VIRGINIA.

October 9, 1950.

Record No. 3729.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*George E. Allen, Anne M. Fallwell* and *W. C. Fitzpatrick,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

Archer Conrad Huddleston was convicted by a jury of statutory rape of Jean Mason, a ten year old girl, and his punishment fixed at fifteen years in the State penitentiary. (Code, sec. 18-54.) He assigns a number of reasons why the verdict should be set aside and the judgment entered thereon reversed.

The alleged insufficiency of the evidence gives us no trouble. The accused is a young man of twenty-seven years, who separated from his wife shortly after his honorable discharge from the armed forces in 1945. He and his wife had made their home with his mother, Mrs. Faris, in Cumberland county, but upon their separation he left

that household and took up his abode near by in what is described as "a dilapidated two-story building." The only other occupant of his home was a woman to whom he was not married. He denied having improper relations with her.

The prosecutrix is the half sister of the wife of the accused and likewise lived in the Faris home. There conditions were far from ideal. In three rooms and a kitchen fifteen persons, including several married couples and their children, lived. From this home, as the local superintendent of public welfare testified, the prosecutrix went to school "poorly clothed, hungry and with bruises on her head."

In August, 1948, Dr. Joseph H. Smith, a local physician, was called to the Faris home to attend the prosecutrix. His examination disclosed that she "had had repeated sexual experiences" which had culminated in pregnancy and a miscarriage.

On October 20 of that year, the local trial justice committed the prosecutrix to the State Board of Public Welfare, in whose custody she was at the time of the trial. She had been removed from the Faris home and taken to Richmond.

According to the testimony of the prosecutrix, which is before us in a narrative form, the accused "had sexual relations with her many times" before she became ill in August, 1948. These relations, she said, continued even after that time. She further testified that these occurrences had taken place at the home of the accused.

Her direct accusation of the accused was not shaken on cross-examination, although she admitted that on previous occasions she had stated that two brothers of the accused, Thomas Cleveland Huddleston and John Calvin Huddleston,[1] had had sexual relations with her, and that she had not claimed that the accused had done so.

---

[1] Both brothers were indicted along with the accused. According to the brief of the accused, Thomas was acquitted and John convicted by separate juries.

On re-direct examination she explained that she had not disclosed the accused as one of her attackers because he had threatened to kill her if she did so.

The accused flatly denied the charge. He said that so far as he knew the girl had never been to his house alone. He further testified that as the result of wounds received in combat "his sexual desire had been very definitely affected."

Mrs. Faris testified that the prosecutrix was untruthful, and that on one occasion she had stolen $2.00 from her (Mrs. Faris') pocketbook.

As bad as it is, there is nothing incredible in the evidence on behalf of the Commonwealth. The medical testimony as to the child's condition is uncontradicted. It was for the jury to say whether they should accept the accusation of the girl or the denial of the accused. They were fully instructed on the weight to be given the uncorroborated testimony of the prosecutrix, and their finding on the sufficiency of the evidence cannot be disturbed.

At the commencement of the trial, upon motion of counsel, all witnesses were excluded from the courtroom. However, when the prosecutrix was called to the stand she entered the courtroom accompanied by Miss Ruth Light, a child welfare worker of the State Board of Public Welfare, in whose custody she had been since her removal from the Faris home, and by whom she had been brought to the courtroom. Upon the motion of the attorney for the Commonwealth and over the objection of counsel for the accused, Miss Light was permitted to sit in the courtroom while the prosecutrix was testifying and thereafter during the trial.

This action of the trial court is assigned as error on the ground that there was no valid reason why the rule excluding the witnesses from the courtroom should have been relaxed in favor of Miss Light. Moreover, it is argued, the prosecutrix was probably under the influence of Miss Light

and "would naturally feel under some compulsion to testify agreeably" to her.

The purpose of excluding the witnesses from the courtroom is, of course, to deprive a later witness of the opportunity of shaping his testimony to correspond to that of an earlier one. Wigmore on Evidence, 3d Ed., Vol. VI, sec. 1838, p. 352. While usually all persons come within the rule of exclusion, the authorities agree that the court, in the exercise of its sound judicial discretion, may make exceptions thereto. In the absence of a showing that there has been an abuse of such discretion, or that the accused was prejudiced thereby, such ruling will not be reversed on appeal. *Burford* v. *Commonwealth*, 179 Va. 752, 760, 761, 20 S. E. (2d) 509, 512.

Numerous cases are recorded where the rulings of trial courts in permitting the parent of an infant prosecutrix to remain in the courtroom while she is testifying, in like cases, have been upheld. See 23 C. J. S., Criminal Law, sec. 1011, p. 383, note 62; *McGuff* v. *State*, 88 Ala. 147, 7 So. 35, 16 Am. St. Rep. 25; *Chambers* v. *State*, 168 Ark. 248, 270 S. W. 528; *Hester* v. *State*, 32 Ga. App. 81, 122 S. E. 721; *State* v. *Smith* (Iowa), 193 N. W. 181; *Druin* v. *Commonwealth* (Ky), 124 S. W. 856.

In the case before us there is no showing of abuse of discretion by the trial court, or of prejudice against the accused by the presence of Miss Light in the courtroom. While she was later called as a witness she did not testify as to the particulars of the crime, nor was her testimony influenced by that of the prosecutrix.

Again, there is no showing that the child was under such influence of the welfare worker as to be swayed by the latter's presence in the courtroom.

In testifying as to the child's condition Miss Light said: "She was a little girl who could not cry, had lines on her face, looked worn and haggard. We had a physician to examine her and she received treatment at the Venereal

Disease Clinic in Richmond. She has been in a home where she was placed ever since."

As the record shows, counsel for the accused "objected to this witness testifying as to what the physician's report showed on the ground of its being hearsay." Whereupon "the court ruled that the witness could testify that Jean Mason was sent to a doctor for examination; that after the examination was made Jean Mason was treated for gonorrhea."

This ruling is assigned as error because, it is said, its effect was to permit the witness to relate the result of the physician's examination, in violation of the hearsay evidence rule.

There is no merit in this assignment. The effect of the trial court's ruling was to exclude the testimony of Miss Light as to the contents of the physician's report, but to permit her to testify that the prosecutrix had been sent to a doctor for an examination and thereafter had been treated for a venereal disease. Presumably the facts which the witness was permitted to relate—that is, that the child had been sent to a physician for an examination and thereafter had been treated at the Venereal Disease Clinic—were matters within the knowledge of the witness and hence were not hearsay.

After the evidence had been completed, but before the jury had retired to consider its verdict, counsel for the accused, for the first time, brought to the attention of the court the fact that Mrs. E. H. Hopkins, the local superintendent of public welfare, who had been called as a witness for the prosecution, was the wife of a member of the jury. As the record shows, this fact was called "to the attention of the court with a request that he take appropriate action on the qualification and propriety of the said juror serving in this case."

The court replied that since this juror had been properly qualified on his *voir dire*, and that since the witness, Mrs. Hopkins, had not testified as to the particulars of the crime,

but merely as to the situation in the home where the prosecutrix lived and the physical condition of the child, it was not necessary that a mistrial be ordered.

■ We are not impressed with the assignment of error based on this ruling. Aside from the limited scope of the testimony of Mrs. Hopkins, as observed by the trial court, there is no evidence in the record that the juror in question had in fact formed or expressed an opinion of the guilt or innocence of the accused contrary to his responses on the examination on his *voir dire*. Nor is there any showing that the two had discussed the case at all.

■ In addition to this, the objection to the qualification of this juror came too late. If his relation to the witness disqualified him from sitting, counsel for the accused, in the exercise of ordinary diligence, could have discovered this before the jury was selected and sworn. The record shows that the name of Mrs. Hopkins was written on the indictment as one of the witnesses upon whose testimony it was based. The record further shows that the juror, Hopkins, was summoned more than twenty days prior to the date of the trial. A mere inspection of the jury list either in advance or at the time of the trial would have disclosed that a witness for the Commonwealth, the local superintendent of public welfare, and a juror had the same name. Proper inquiry at the time the jurors were being selected would have disclosed the relationship of the two.

In *Davis* v. *Webb*, 190 Va. 997, 1003, 59 S. E. (2d) 116, 119, we sustained the action of the trial court in refusing to set aside a verdict on the ground that one of the jurors who participated in the finding had served on a jury during a previous trial of the same case. We there pointed out that since, by the exercise of ordinary diligence, the disqualification of the juror could have been discovered prior to his acceptance, and inasmuch as there had been no showing that the litigant had suffered injustice from the service of such juror, the ruling of the trial court was proper. The same principle applies here.

Complaint is made of the refusal of the trial court to give Instruction No. 2 which reads thus: "The court instructs the jury that if, upon the whole case, there is any reasonable hypothesis consistent with the innocence of the accused, they must find him not guilty."

We agree with the position of the Attorney General that while this instruction correctly states an abstract principle of law, its refusal was not prejudicial in the present case.

In determining the guilt or innocence of the accused the sole issue was whether he had commited the acts which the prosecutrix testified to, or had not done so. When the jury accepted the child's testimony as true and determined that the accused had committed the acts, there was no "reasonable hypothesis consistent with" his innocence, for no other criminal agency was involved nor were there any circumstances which absolved him from guilt.

The jury was fully instructed on the presumption of innocence of the accused, the burden of proof, reasonable doubt, and the weight to be given the testimony of the prosecutrix. The refusal to grant the tendered instruction was not error.

Complaint is also made of the refusal of the court to grant Instruction No. 7, dealing with the presumption of innocence and reasonable doubt. It was refused, as the record shows, because the trial court was of opinion that the subject had been "covered by other instructions given."

The first paragraph of Instruction No. 7 follows verbatim Instruction No. 4 granted at the request of the accused. Thus needless repetition would have resulted if the instruction had been granted in the form asked for. The second paragraph of the refused instruction is merely an argumentative enlargement of Instruction No. 2 which has been discussed. What has been said with respect to the refusal of the latter instruction applies with equal force to the second paragraph of Instruction No. 7.

The accused asked for and was refused Instruction No. 3, which would have told the jury that "the failure of the

evidence to disclose any other criminal agent than the accused is not a circumstance which may be considered by the jury in determining whether or not he was guilty of the crime" with which he was charged. The refusal of this instruction is the final assignment of error.

The requested instruction states a correct principle of law and is properly given in the type of case in which there is evidence tending to show that some other person than the accused committed the crime. But, as we pointed out in *Jessie* v. *Commonwealth*, 112 Va. 887, 891, 71 S. E. 612, it is irrelevant and should not be given where no such evidence is at hand.

In the case before us, as has been said, the issue was whether the accused had committed the offense against the prosecutrix. There was no evidence upon which the jury could have found that the particular crime with which the accused was charged was committed by some other person. While two brothers of the accused had been indicted for having attacked the prosecutrix, each was charged with a similar offense, but not the identical one with which the accused was charged. The fact that the jury may have believed that either or both of these brothers had committed such like offenses would not have entitled the accused to an acquittal.

The gist of the offense was not the condition in which the prosecutrix was found subsequent to the alleged occurrence, but whether the accused had violated her person contrary to the terms of the statute.

Upon the whole we are of opinion that the jury were fully and fairly instructed and that there is no prejudicial error in the record. Consequently, the judgment is

*Affirmed.*