UNITED STATES

v.

Sergeant Lawrence G. MARSHALL, Jr., FR 383–52–9866 Detachment 5, 7th Weather Squadron United States Air Forces in Europe.

ACM S24497.

U. S. Air Force Court of Military Review.

Sentence Adjudged 1 Feb. 1977.

Decided 12 Aug. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Major Gilbert J. Regan and Captain William D. Byassee.

Before ABRAMS, C. J., EARLY, Senior Judge, and FORAY, J.

## DECISION

ABRAMS, Chief Judge:

Contrary to his pleas, the accused was convicted by special court-martial of wrongfully possessing, using, and transferring marijuana, all offenses occurring on the same day, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence provides for

discharge from the service with a bad conduct discharge, confinement at hard labor for five months, and reduction to the grade of airman basic, with suspension of reduction below the grade of airman.

On appeal, appellate defense counsel have assigned six errors. We find that only four assertions warrant comment as one is without merit and another is mooted by our disposition of another assigned error.

Initially, appellate defense counsel contend:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING A DEFENSE REQUEST FOR THE APPEARANCE OF JAMES JAGGERS, A MATERIAL WITNESS.

On the evening of 15 October 1976, four teenage dependent boys accompanied accused, at his invitation, to his barracks room at an army heliport in Germany. Three of the young men knew the accused through his activities as assistant high school football coach. Accused told them that he was inviting them to his room to "smoke a bowl," or, according to one witness's vague recollection, the accused stated the purpose was to "get his head fixed up and he had something for us if we wanted to."

■ Three of the dependents, Holobaugh, Kasianczuk, and Kern, were called as prosecution witnesses. The remaining youth, Jaggers, although listed on the charge sheet as a witness, was not called by trial counsel. Prior to trial, individual defense counsel had advised trial counsel that he wished to call Jaggers as a witness regarding the identity of the pipe allegedly smoked. Subsequently, both counsel agreed that the identity of the pipe would not be a litigated issue. Individual defense counsel did not withdraw his request for Jaggers, but he did not specifically state that the request was still in force, nor did he state what material evidence he anticipated from this witness.[1]

---

1. The actions of individual defense counsel fell far short of meeting the requirements of Manual for Courts-Martial, 1969 (Rev.), paragraph 115a; see *United States v. Lucas*, 54 C.M.R.

All three Government witnesses agreed that, after they arrived at accused's room, he locked the door, placed a rug against the crack at the bottom of the door, and turned on a strobe light and music. Accused then took out a ceramic pipe, filled it with the contents of a piece of paper he obtained from his locker, and lit it. The boys, with the exception of Kasianczuk who did not participate, sat in a circle taking turns smoking the pipe. Several times during the smoking session accused sprayed a lemon-scented air freshener about the room.

Holobaugh testified that, although he had smoked marijuana on numerous occasions, he did not feel high after smoking that evening. Although he was familiar with the aroma of marijuana, he could not state positively whether or not this was marijuana. After being pressed on cross-examination, Holobaugh allowed that it was not unreasonable to assume that it was not marijuana. After they finished smoking, Jaggers became sick and threw up in accused's room.

Kasianczuk does not use drugs and stayed apart from the group. He was unable to smell what was being smoked as accused was constantly spraying the room with air freshener. He noticed that each of the smokers would inhale deeply, hold his breath for a few moments, and then exhale.

Kern, who returned from the United States with his father the night prior to testifying, was a frequent user of marijuana and hashish. He had last smoked hashish only a few weeks before the night in question. The substance smoked in accused's room smelled and looked like hashish (although he was unable to distinguish its color due to the lighting) and gave him a "high" sensation. This sensation, however, was stronger than he had experienced previously. The substance smoked was never referred to by name or nickname anytime during the evening. In response to a question asked by individual defense counsel, Kern indicated that Jaggers opined later that the bowl might have been filled with "heroin laced with hashish", or "hashish laced with heroin". Kern was convinced that the bowl he shared with accused contained hashish.

■ The prosecution rested after calling these three young men. The defense called no witnesses, but insisted that Jaggers be called, maintaining that Kern's testimony established that Jaggers was both "material and essential". Individual defense counsel argued that the testimony raised the possibility that the substance placed in the bowl by accused was heroin mixed with something other than marijuana or hashish. He indicated that he had attempted to talk with Jaggers, but his father had refused to allow the interview.[2] The trial judge denied the request for the production of Jaggers, ruling that there had been no showing of materiality concerning his possible testimony.

■ Appellate defense counsel argue that once a potential witness is shown to have material testimony, it is reversible error to deny a defense request for his production. They rely principally upon the language of *United States v. Carpenter*, 1 M.J. 384 (1976) wherein the Court stressed that once the materiality and relevancy of a witness has been shown, the Government must either produce the witness or abate the proceeding. We do not believe that materiality and relevancy are the only fac-

2 M.J. 387 (A.F.C.M.R.1977). This, of course, did not preclude a right to compel Jagger's attendance at trial if matters presented in the course of the Government's case indicated materiality. *United States v. Corley*, 51 C.M.R. 161, 1 M.J. 584 (A.C.M.R.1976).

2. We note in an affidavit submitted by individual defense counsel in support of this assertion of error that counsel was aware that Jaggers had given a sworn statement to the investiga-

tors prior to trial. Yet there is no indication in the record that counsel ever obtained or even requested this statement to ascertain what Jaggers had stated concerning the identity of the substance smoked. He also seemed surprised by Kern's testimony. Counsel, of course, must show he exercised due diligence in ascertaining the extent of a requested witness's knowledge of material and relevant facts. *United States v. Manos*, 17 U.S.C.M.A. 10, 37 C.M.R. 274 (1967).

tors to be applied in determining whether a requested witness must be called. There is, in our opinion, a third factor: that the expected testimony serves a purpose and is not merely cumulative. We find support for our position in *United States v. Jouan*, 3 M.J. 136 (1977). In commenting on the rule enunciated in *Carpenter*, the Court indicated that necessity is a criteria as it went on to state that "we do not seek to open the floodgate to limitless requests for witnesses, each side seeking to augment its case by numerical superiority." *Jouan*, supra, at 137.

Further support is found in the recent decision of *United States v. Williams*, 3 M.J. 239 (C.M.A.1977), decided subsequent to the pleadings and oral argument in the instant case. The Court, however, in a divided opinion, was unanimous in giving the military judge the discretion to refuse requests for defense witnesses whose testimony would be "merely cumulative". *Williams*, supra, footnotes 8 and 9, at page 243.

■ Here, not only would Jagger's testimony be cumulative, but apparently would only bolster the case of the Government, not the accused. Even considering Jagger's hearsay declaration, there is no evidence of record to indicate that he could furnish testimony that would either negate the Government's evidence or support the defense's contention that marijuana in the hashish form was not possessed, used or transferred by the accused on the evening in question. See *United States v. Iturralde-Aponte*, 1 M.J. 196 (1975). We, therefore, reject this assigned error.

Appellate defense counsel next aver:

THE MILITARY JUDGE ABUSED HIS DISCRETION IN FAILING TO EXCLUDE THE FATHER OF A DEPENDENT WITNESS FROM THE COURTROOM UPON MOTION OF TRIAL DEFENSE COUNSEL.

■ When Kern, aged sixteen, was called by the prosecution, the defense objected to his father's remaining in the courtroom during the son's testimony. Counsel advised the judge that the senior Kern had been "very aggressive" in seeing that this case went to trial and counsel preferred that the witness not testify under the watchful eye of his father. Although trial counsel did not oppose the motion, it was denied.

The military judge has the authority to exclude members of the public from the trial for good cause. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 53e; *United States v. Henderson*, 11 U.S.C.M.A. 556, 29 C.M.R. 372 (1960); *United States v. Frye*, 25 C.M.R. 769 (A.F.B.R. 1957). There is no military precedent however, as to whether *accused* has a right to exclude certain members of the public. In a case concerning the defendant's objection to members of the press in the courtroom, the United States Supreme Court held that when the accused objects to the presence of certain persons in the courtroom, he is required to show the possibility of prejudice if the individual or individuals are allowed to remain, unless the trial procedure itself involves an inherent lack of due process. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). In *United States v. Maestas*, 523 F.2d 316 (10th Cir. 1975), the issue was whether an accused can object to the presence of a law enforcement official on the basis that his presence might intimidate other witnesses when they gave testimony.[3] The Court held that the presence of the peace officer was not error in the absence of any showing that a specific witness was, in fact, in some manner coerced, or altered his or her testimony due to the policeman's presence.

In a reverse situation, it has been held that a right to a public trial is not absolute in the sense that an accused has the right to have a particular person present under all circumstances as a spectator during the tri-

---

**3.** In the *Maestas* case, as in most Federal cases dealing with this issue, the challenged individual also was a Government witness. We, of course, are never faced with this problem as military trial procedure requires the exclusion of witnesses from the courtroom except when testifying. Manual, supra, paragraph 53f.

al. In *United States ex rel. Laws v. Yeager*, 448 F.2d 74 (3d Cir. 1971), over the objection of counsel for one of several co-accused, the trial judge acceded to the request of a prosecution witness that his mother not be present while he testified.

The only case we have found directly on point is *Huddleston v. Commonwealth*, 191 Va. 400, 61 S.E.2d 276 (1950). There it was held not to be error for the trial judge, over defense objection, to allow the temporary guardian of a child victim to remain in the courtroom during the child's testimony. The ruling was predicated on the absence of any showing that the witness was under such influence of her guardian as to be swayed by her presence in the courtroom.

In the instant case, individual defense counsel suggested that Kern might be influenced or coerced by his father's presence, but offered not a scintilla of evidence tending to establish that this was a fact. There is nothing in the record to indicate that Kern's testimony was in any way tempered or influenced by the presence of his father in the room. We hold that before defense counsel can require the exclusion of a spectator, he must come forward with evidence tending to show that this individual's presence would coerce or, in some manner, shade the testimony of the witness being called. The military judge, therefore, was not in error in allowing the father of Kern to remain during his son's testimony.

In the next assigned error warranting discussion, appellate defense maintain that:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO ADVISE APPELLANT OF THE MAXIMUM PERMISSIBLE PUNISHMENT WHICH THE COURT COULD IMPOSE.

It would seem, as appellate defense counsel argue, that the accused incredibly was unaware that the court had the authority to impose a punitive discharge until the moment the military judge announced that his sentence included a bad conduct discharge! This unique situation resulted from the fact that accused obtained an Army judge advocate as individual counsel and dismissed the assigned Air Force counsel. Army practice authorizes referring a case to either a regular special court-martial, or a special court-martial empowered to adjudge a bad conduct discharge. As the names suggest, the former has no discharge power. Individual counsel, who had no previous experience with Air Force practice, assumed this was a "regular special" as no court reporter was detailed in the referral. He maintains that he inquired of a member of the Staff Judge Advocate's Office if Marshall was being tried by a "regular special" and received an affirmative response. Although both the trial counsel and the Chief of Military Justice do not recall such a conversation, an affirmative response to such an inquiry, with little impact upon the memory, is understandable in light of Air Force unawareness as to the significance of that terminology. Counsel led his client to believe that a punitive discharge was not a possibility.

It can be argued that individual defense counsel should have inquired more diligently into Air Force practice, or pondered on the role of the court reporter during the proceedings. This line of thought does not detract from the fact that we believe that he sincerely thought no discharge was possible and tailored the post-findings evidence he presented on behalf of the accused accordingly. He asked no questions of the accused concerning his desire to stay in service. He did not call accused's commander as a mitigation witness.[4] It is impossible to speculate on the impact such testimony might have had upon the sentence imposed. The accused should not suffer prejudice because of the honest mistake of his counsel even in the absence of due diligence.

■ We agree with the contention of appellate defense counsel that this misappre-

---

4. During the post-trial clemency interview, Marshall, who was on his second enlistment indicated a strong desire to make the Air Force a career. His commander submitted a state-

ment in which he opined that accused had "definite restoration potential and considerable value to the Air Force."

hension would have been avoided if the military judge had followed AFP 111–6, Procedure Guide for Courts-Martial, Chapter 3, 19 April 1976, which suggests that, at a judge alone trial, the military judge advise counsel as to the maximum punishment imposable before inviting argument as to sentence. We do not agree, however, that a military judge is required to give this advice. As stated in the introduction to this pamphlet, the procedure guide is just that; a guide, and is not binding or mandatory. We suggest, however, that whenever accused is not represented by an Air Force judge advocate, the military judge follow the procedure guide to insure that the problem facing us in this case remains unique.

■ We conclude, therefore, that although the military judge was not bound to advise counsel as to the imposable sentence, his failure to do so in this case, coupled with the ignorance of individual defense counsel in this area, requires the disapproval of that portion of the sentence imposing a bad conduct discharge. Our conclusion is based not upon a determination of prejudicial error, but, rather, on the basic and fundamental issue of whether accused was afforded a truly fair and just hearing in the presentencing portion of the trial. We cannot, however, take action at this time to disapprove the punitive discharge in view of our disposition of the last assignment of error warranting discussion.

Appellate defense allege further:

THE REVIEW OF THE STAFF JUDGE ADVOCATE IS INSUFFICIENT AND MISLEADING.

■ We agree. Although the defense did not call witnesses during the case-in-chief, the thrust of its case was that the evidence was insufficient to establish beyond reasonable doubt that the substance smoked that evening was marijuana. Appellate defense argue that the review does not fairly summarize cross-examination tending to support this contention. Although we agree that the reviewer's summarization leaves much to be desired, we find a fatal defect that overshadows the question of adequate summarization. The reviewer, in delineating the testimony of Kern, states that, "After smoking the pipe in the accused's room, the *accused* became high much the same as he had on prior occasions when he smoked marijuana and hashish." (Emphasis added.) It can be argued that a close reading of the entire paragraph would indicate that the reviewer inadvertently used the word "accused" to refer to the witness Kern. In view of the fact that Kern was the only witness to indicate that the substance smoked had any effect upon him, it is impossible to conclude with certainty that such prejudicial advice clearly would have been recognized by the convening authority to be erroneous. *United States v. Garcia*, 23 U.S.C.M.A. 479, 50 C.M.R. 498, 1 M.J. 77 (1975); *United States v. Cumberledge*, 1 M.J. 768 (A.F.C.M.R. 1975). Faced with an almost identical mistake in the *Cumberledge* case, we refused to hold that the error was waived by the defense counsel's failure to correct or challenge the erroneous and misleading advice. See *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). We adhere to that position.

We also note that the reviewer advised the convening authority of the maximum punishment accused would have faced if he had been tried by general court-martial. This practice was condemned by this Court in *United States v. Harrison*, No. S24464 (A.F.C.M.R. 3 Feb. 1977); see also *United States v. Stockman*, 51 C.M.R. 604, 1 M.J. 757 (A.F.C.M.R.1975). Our decision in *Harrison*, however, is presently pending before the United States Court of Military Appeals upon certification of The Judge Advocate General, United States Air Force, dated 10 February 1977.

Accordingly, the record of trial is returned to The Judge Advocate General, United States Air Force, for referral to the same or a different convening authority for a new review and action.

EARLY, Senior Judge, and FORAY, Judge, concur.