COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia


ROBIN VINCE, S/K/A
 ROBIN RENEE VINCE
                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 0533-14-2              JUDGE MARLA GRAFF DECKER
                                                         FEBRUARY 18, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge

B. Thomas Bledsoe (Law Office of B. Thomas Bledsoe, on briefs),
for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Robin Renee Vince appeals her conviction for animal cruelty, in violation of Code

§ 3.2-6570(A)(ii).  The appellant contends that the trial court erred by allowing an expert witness

to testify to the ultimate issue of fact and by permitting that witness to remain in the courtroom

during her testimony.  We hold that the expert did not testify to the ultimate issue of fact.

Further, we hold that although the trial court improperly allowed the expert to return to the

courtroom to listen to evidence presented by the appellant before testifying during the

Commonwealth's rebuttal, that error was harmless.  For these reasons, we affirm.

--------------------------------

        [*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge.

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The appellant provided boarding for a horse named Max for two months. The owners believed that the appellant kept the horse on her farm in Charles City County and tried to visit him there after scheduling an appointment with her. At that time, the owners learned that the horse was located at the appellant's Nottoway County property. When the owners finally saw the horse, they found him in "really, really bad shape." The horse had been physically injured. He had numerous cuts on his body and a severely injured leg. The horse's pen was in poor condition and contained a barrel of stagnant water and old hay that was in mud.

The owners took the horse back to their home on the same day that they visited him. They took photographs of him, memorializing his general appearance and specific injuries. They contacted the local veterinarian, who advised them over the phone to monitor the horse and "see how he would react."

Three days later, Dr. Scott Reiners, with Mountain View Equine Hospital, examined the horse. At trial, he testified about the animal's condition and the veterinary care that he provided. Dr. Reiners estimated that the wounds were approximately two weeks old at the time he treated them. Reiners explained that the horse was lame due to the abnormality in his gait "because of the wounds involved." He diagnosed the horse as having an infected and abscessed wound in the leg. He also determined that the wound required surgery. Dr. Reiners, however, was unable to repair the lacerated tendon. He stated that the tendon would have been easier to repair immediately after the injury occurred. Over the appellant's objection, the Commonwealth's Attorney asked whether the horse's "wounds and injuries[,] when they occurred, . . . require[d] emergency veterinary care," and Dr. Reiners responded "[y]es."

---

[1] On appeal, this Court views the record in the light most favorable to the Commonwealth, the prevailing party at trial. Hussen v. Commonwealth, 257 Va. 93, 94, 511 S.E.2d 106, 106 (1999).

In her defense, the appellant presented evidence of her efforts to treat the horse's injuries. Her son testified that after the horse was injured, he and two other people dressed and treated the wounds. When the appellant returned home, she too treated the horse. She unwrapped, cleaned, and bandaged the wounds. The appellant further explained that she gave the horse injections, including Banamine (an anti-inflammatory), Bute (a pain medication), and penicillin (an antibiotic). She specified that she gave the horse "40 ccs" (cubic centimeters) of the antibiotic, administered through "10 per site," on "four different areas on the body." The appellant further stated that she gave the horse this antibiotic for four days. Although Banamine is a prescription medication, the appellant did not have a prescription written for this horse, nor did she call a veterinarian to examine the horse at any time while he was in her care. The appellant claimed that the horse was not lame when he was with her. During cross-examination, the Commonwealth introduced into evidence her written statement to the police about her care and treatment of the animal.

During the Commonwealth's case in rebuttal, Dr. Reiners testified again, after having remained in the courtroom during the appellant's testimony over her objections. The veterinarian reviewed the appellant's written notes about the treatment she administered. He testified that what the appellant had written was not "an appropriate dose" of the antibiotic. Reiners explained that the horse should have received "8.5 million international units of penicillin twice a day." When asked if the appellant gave the correct dosage of penicillin, Reiners testified that a single dose of "40 ccs" would be an overdose because it "should be given twice a day." He explained that he did not know what strength of medication the appellant used because it was available in varying "international units."

Dr. Reiners also testified that he believed that the horse was in pain due to the severity of his injuries. Further, Reiners explained that without surgery, the infection "would have

progressed[,] . . . basically the infection would have [eaten] another hole in the skin," drained, and eventually closed, but the tendon would never have healed without surgical intervention.

The trial court found that the Commonwealth proved deprivation of necessary emergency veterinary treatment and convicted the appellant of the misdemeanor offense of animal cruelty.[2] She was sentenced to twelve months in jail, with all time suspended.

## II.  ANALYSIS

The appellant argues that the trial court improperly allowed Dr. Reiners, an expert witness, to testify to the ultimate issue of fact in the case.  She also contends that the trial court erred by failing to exclude Dr. Reiners from the courtroom during her case and before he testified as a rebuttal witness for the Commonwealth.

### A.  *Ultimate Issue of Fact*

The appellant contends that the trial court erroneously allowed Dr. Reiners to testify to the ultimate issue of fact when he opined that the horse's wounds required immediate veterinary care.  The Commonwealth responds that the challenged testimony was not on the ultimate issue of fact because it did not attach culpability to the appellant's actions.[3]

Admission of opinion testimony is limited.  Ramsey v. Commonwealth, 200 Va. 245, 249, 105 S.E.2d 155, 158 (1958).  In the context of expert witness testimony, an opinion offered is inadmissible "when the evidence, exclusive of expert testimony, is sufficient to enable a jury of laymen to reach an intelligent conclusion."  Bond v. Commonwealth, 226 Va. 534, 537-38,

---

[2] The court expressly found that the Commonwealth failed to prove that the appellant did not adequately feed the horse, the alternate basis for the charged offense.

[3] The Commonwealth argues in the alternative that any error in allowing the expert's testimony was harmless.  See Jenkins v. Commonwealth, 254 Va. 333, 336, 492 S.E.2d 131, 132 (1997) (examining whether the constitutional error of admitting an "[e]xpert opinion on an ultimate fact in issue" was harmless).  We need not address this argument in light of our holding that the trial court did not abuse its discretion by allowing the challenged testimony.

311 S.E.2d 769, 771 (1984); see also Rule 2:704(b) (prohibiting expert opinion testimony "on the ultimate issues of fact" in criminal cases).

The basic concept is logical and clear. "'[E]xpert evidence concerning matters of common knowledge or those as to which the jury [is] as competent to form an accurate opinion . . . is inadmissible.'" Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755 (1979) (quoting Venable v. Stockner, 200 Va. 900, 904, 108 S.E.2d 380, 383 (1959)); see Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992). In contrast, it is equally logical and clear that expert testimony is proper when expertise is necessary in order for the layman to understand facts in context and make the ultimate decision regarding innocence or guilt of a criminal defendant. An expert witness may provide testimony, including opinions, if the fact finder "'is confronted with issues' that 'cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life' and thus require 'scientific or specialized knowledge.'" Schooler v. Commonwealth, 14 Va. App. 418, 420, 417 S.E.2d 110, 111 (1992) (quoting Compton, 219 Va. at 726, 250 S.E.2d at 755-56) (internal quotation marks omitted). Generally, an expert opinion is admissible as long as the finder of fact is not equally competent to evaluate that evidence. Cf. Compton, 219 Va. at 723, 726-27, 250 S.E.2d at 754-56 (affirming admission of expert testimony that the blood spatter evidence indicated that the victim could not have been standing at the time of the shooting); Davis v. Commonwealth, 12 Va. App. 728, 730-32, 406 S.E.2d 922, 923-24 (1991) (holding that it was not an opinion on the ultimate issue of fact when the expert testified that typically the amount of drugs held by the defendant was "not consistent with personal use").

"'The admission of expert testimony is committed to the sound discretion of the trial judge . . . .'" Commonwealth v. Allen, 269 Va. 262, 274, 609 S.E.2d 4, 12 (2005) (quoting

Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992)); see also Gregory v. Commonwealth, 64 Va. App. 87, 95, 764 S.E.2d 732, 736 (2014). This decision will be reversed on appeal only if the trial court abused its discretion under the particular circumstances of the case. E.g., Atkins v. Commonwealth, 272 Va. 144, 153, 631 S.E.2d 93, 97 (2006); Compton, 219 Va. at 727, 250 S.E.2d at 756; Kilby v. Commonwealth, 52 Va. App. 397, 410, 663 S.E.2d 540, 547 (2008).

Code § 3.2-6570(A)(ii), in pertinent part, provides that a person who "deprives any animal of necessary . . . emergency veterinary treatment . . . is guilty of a Class 1 misdemeanor." The code defines "[e]mergency veterinary treatment" as "veterinary treatment to stabilize a life-threatening condition, alleviate suffering, prevent further disease transmission, or prevent further disease progression." Code § 3.2-6500; see also Sullivan v. Commonwealth, 280 Va. 672, 676-77, 701 S.E.2d 61, 64 (2010) (examining the sufficiency of the evidence under the statute's predecessor, Code § 3.1-796.122). In order to support a conviction, the Commonwealth was required to prove that the appellant deprived the horse of necessary emergency veterinary treatment that fell within the statutory definition.

The ultimate issue of fact is essentially the last question for the trier of fact—the key or final issue—in this case, whether the appellant deprived the horse of necessary emergency veterinary treatment. In order for the fact finder to determine whether the appellant did so, it was necessary for that finder of fact to understand the extent and severity of those injuries and the standard of care for their treatment.

Here, the record supports the conclusion that the expert's testimony was not an opinion that the appellant deprived the horse of necessary emergency veterinary treatment. Dr. Reiners, who examined and treated the horse once he was back with his owners, testified in detail about the injuries. The expert's testimony reflecting his medical diagnosis of the injuries and his

opinion that those injuries required veterinary care when they occurred was based on his specialized knowledge. Cf. Ward v. Commonwealth, 264 Va. 648, 652-53, 570 S.E.2d 827, 830 (2002) (holding that it was not error to allow an expert to testify that the victim's stroke did not cause her post-traumatic stress disorder); Hussen v. Commonwealth, 257 Va. 93, 99, 511 S.E.2d 106, 109 (1999) (upholding the admission of expert testimony in a rape case that the victim's injury was "not consistent with consensual, first time intercourse" because he did not opine that the "intercourse between the defendant and the victim was against her will"). Conversely, those conclusions were not ones that could be "'determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge.'" Schooler, 14 Va. App. at 420, 417 S.E.2d at 111 (quoting Compton, 219 Va. at 726, 250 S.E.2d at 755-56) (internal quotation marks omitted). The expert's testimony as to his assessment that the injuries required emergency medical care at the time that they occurred necessarily aided the trial court, as the finder of fact, in determining whether the appellant deprived the horse of necessary emergency veterinary care.[4]

Consequently, we hold that Dr. Reiners did not invade the province of the fact finder by testifying to the ultimate issue of fact, that the appellant deprived the horse of necessary emergency veterinary treatment. Thus, the trial court did not abuse its discretion in admitting Dr. Reiners' expert opinion.

### B. Presence of Expert Witness in Courtroom

The appellant argues that the trial court erred by allowing Dr. Reiners to remain in the courtroom during the testimony of other witnesses, in violation of Code § 19.2-265.1. The

---

[4] In addition, a trial judge sitting as the fact finder is presumed to know the law and to have applied it correctly absent clear evidence to the contrary. E.g., Coley v. Commonwealth, 55 Va. App. 624, 634, 688 S.E.2d 288, 293 (2010). Since this presumption was not rebutted, we reject any contention that the judge construed the expert's testimony broadly as an improper opinion on the ultimate issue of fact.

Commonwealth responds that the appellant waived any objection to the admission of the expert's rebuttal testimony by failing to object when he was called as a rebuttal witness. The Commonwealth further contends that the trial court did not abuse its discretion in allowing the expert to listen to the appellant's evidence before testifying in rebuttal. Finally, the Commonwealth argues that any error was harmless.

At the beginning of the trial, the appellant made a motion to exclude the witnesses. The court granted the motion. During the appellant's presentation of evidence, the Commonwealth moved that Dr. Reiners be permitted to return to the courtroom. The appellant objected. The trial court granted the motion and allowed the witness to return to the courtroom and remain while the defense witnesses testified. After the completion of the appellant's case, the Commonwealth called Dr. Reiners as a rebuttal witness.

Beginning with the procedural bar claim, the Commonwealth correctly notes that the appellant did not specifically challenge the admissibility of the expert's rebuttal testimony at the time that he testified. Rule 5A:18 provides, in pertinent part, that this Court will review a ruling of the lower court only if "an objection was stated with reasonable certainty at the time of the ruling." See also Commonwealth v. Amos, 287 Va. 301, 307-08, 754 S.E.2d 304, 307-08 (2014) (applying the contemporaneous objection exception in Code § 8.01-384(A) to Rule 5A:18). The purposes of Rule 5A:18 are to allow the trial court the opportunity to "take appropriate action to correct the error" and "'avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" Maxwell v. Commonwealth, 287 Va. 258, 267, 264-65, 754 S.E.2d 516, 520, 519 (2014) (quoting State Highway Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974)).

The facts in this case demonstrate that the issue was squarely before the trial court. In support of her motion to allow Reiners to return to the courtroom, the Commonwealth's Attorney

made clear that she wanted her expert present because she believed that the appellant would present testimony regarding the treatment that the appellant provided to the horse. The Commonwealth added that she wanted the expert to listen to the testimony so that he could "opine about whether that [treatment] was appropriate or not." The appellant objected at that time, when the basis for having the expert in the courtroom was fully before the trial court. In light of the clarity associated with the Commonwealth's motion, the appellant was not required to object again, when the Commonwealth called Reiners to testify, in order to preserve her ability to appeal the trial court's decision to allow the expert to remain in the courtroom during her presentation of evidence for the purpose of later testifying in rebuttal. See Code § 8.01-384(A) ("No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal . . . a ruling . . . of the court."); see also Shelton v. Commonwealth, 274 Va. 121, 127, 645 S.E.2d 914, 917 (2007) (explaining that once a timely objection is made, it is waived only if the record affirmatively shows that the objecting party intended to abandon that argument). This record shows that the Commonwealth's Attorney wanted Reiners in the courtroom so that he could hear testimony and later respond to it on rebuttal. The appellant objected timely, and the trial court was made aware that the purpose of the motion was to enable the expert to opine on the treatment that the appellant provided the horse. Thus, the issue was preserved for appeal.

Turning next to the merits of the assignment of error, settled principles provide that trial courts have wide discretion to manage their courtrooms and "the conduct of a trial." Justus v. Commonwealth, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981). However, an error of law, by its very nature, is an abuse of discretion. E.g., Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008); Commonwealth v. Greer, 63 Va. App. 561, 568, 760 S.E.2d 132, 135 (2014). Further, the interpretation of a statute is a question of law that this Court reviews *de*

- 9 -

*novo* on appeal.  Baker v. Commonwealth, 278 Va. 656, 660, 685 S.E.2d 661, 663 (2009); Belew v. Commonwealth, 62 Va. App. 55, 62, 741 S.E.2d 800, 803 (2013).

Code § 19.2-265.1, in pertinent part, provides that in a criminal trial, the court "shall upon the motion of either the attorney for the Commonwealth or any defendant, *require* the exclusion of every witness to be called."  (Emphasis added.); see also Rule 2:615(a).[5]  The statute exempts "any victim as defined in § 19.2-11.01 who is to be called as a witness."  Code § 19.2-265.1; see also Rule 2:615(c).  "[T]he 'purpose of excluding the witnesses from the courtroom is . . . to deprive a later witness of the opportunity of shaping his testimony to correspond to that of an earlier one.'"  Bennett v. Commonwealth, 236 Va. 448, 465, 374 S.E.2d 303, 314 (1988) (quoting Huddleston v. Commonwealth, 191 Va. 400, 405, 61 S.E.2d 276, 279 (1950)).  Under the plain language of the statute, a defendant has an absolute right to the exclusion of witnesses.  Johnson v. Commonwealth, 217 Va. 682, 683, 232 S.E.2d 741, 742 (1977) (interpreting former Code § 8-211.1, a precursor statute to Code § 19.2-265.1).[6] Consequently, the trial court erred by allowing Dr. Reiners to return to the courtroom over the appellant's objection and remain there through the appellant's case.  Cf. id. (holding that it was error to exclude all witnesses from the courtroom except the investigating officer).

The Commonwealth argues that expert witnesses are not encompassed by the statute, citing a Federal Rule of Evidence in support of this interpretation.  See Fed. R. Evid. 615(c) (specifically providing that a trial court may not exclude "a person whose presence a party shows

---

[5] The rule also provides that "[w]here expert witnesses are to testify in the case, the court may, at the request of all parties, allow one expert witness for each party to remain in the courtroom."  Rule 2:615(b).  Of course here, both parties did not request to have expert witnesses remain in the courtroom, and one clearly objected.

[6] The former code section states that "[i]n the trial of every case, . . . the court . . . shall[,] upon the motion of any party, *require* the exclusion of every witness whose presence is not necessary to the proceedings."  Code § 8-211.1 (1975) (emphasis added).

to be essential to presenting the party's claim or defense"). In its review of a statute, however, the appellate court must conclude that the General Assembly meant what it said. See, e.g., Johnson v. Commonwealth, 58 Va. App. 625, 641, 712 S.E.2d 751, 759 (2011) ("'We can only administer the law as it is written.'" (quoting Uninsured Emp'rs Fund v. Wilson, 46 Va. App. 500, 506, 619 S.E.2d 476, 479 (2005))). The language of the statute "require[s] the exclusion of every witness," and exempts only one expert witness for each party "at the request of all parties" and "[a]ny victim." Code § 19.2-265.1; see also Conkling v. Commonwealth, 45 Va. App. 518, 522, 612 S.E.2d 235, 237 (2005) ("'[W]here a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute.'" (quoting Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000))). We decline to read an exception for expert witnesses into the applicable Virginia statute, in contradiction of its plain language. Code § 19.2-265.1; see Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009) ("When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.").

In addition, the Commonwealth urges us to adopt the analytical framework applied where a witness violates an exclusion order. In that circumstance, a trial court has the discretion to allow the witness to testify after having been present in the courtroom in violation of the order. E.g., Bennett, 236 Va. at 465, 374 S.E.2d at 314; Brickhouse v. Commonwealth, 208 Va. 533, 537, 159 S.E.2d 611, 614 (1968). A witness' violation of an exclusion order, however, differs significantly from the situation in which a trial court expressly permits a witness' presence in the courtroom over the defendant's objection. Under the plain language of Code § 19.2-265.1 and the Supreme Court of Virginia's interpretation of that statute's predecessor in Johnson, 217 Va. at 683, 232 S.E.2d at 742, trial courts lack the discretion to allow witnesses to remain in the

- 11 -

courtroom over a defendant's objection when the defendant has previously made a motion to exclude the witnesses. Therefore, we hold that the trial court's granting of the Commonwealth's motion for its expert witness to return to the courtroom violated the defendant's statutory right to the exclusion of witnesses.

This conclusion, however, does not end our analysis. Where an error has occurred, this Court must determine whether that error was harmless. Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (citing Code § 8.01-678); Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007). A non-constitutional error, such as this one, is harmless, if "'when all is said and done, . . . the error did not influence the [trier of fact], or had but slight effect.'" Ramsey v. Commonwealth, 63 Va. App. 341, 356, 757 S.E.2d 576, 584 (2014) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)); accord Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (applying this test in the context of review of a bench trial). However, if we "'cannot say, with fair assurance, after pondering all that happened . . . , that the judgment was not substantially swayed by the error, . . . the conviction cannot stand.'" Ramsey, 63 Va. App. at 356, 757 S.E.2d at 584 (quoting Clay, 262 Va. at 260, 546 S.E.2d at 731-32). One measure of harmlessness is "if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any substantial influence on the verdict.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986)) (internal quotation marks omitted).

During rebuttal, the expert testified about the treatment that the appellant provided to the horse. Most of that testimony was based on Reiners' in-court review of the appellant's written statement to police. The only rebuttal testimony specifically in response to the appellant's testimony was the expert's statement that "she said she gave 40 ccs . . . once a day." Reiners

- 12 -

clarified that a single dose of the antibiotic daily was inappropriate.[7] However, despite Reiners' testimony, the appellant had not testified that she administered the dose of antibiotic only once a day. Consequently, this portion of the expert's testimony should not have influenced the trial court in rendering the judgment.

Further, the other evidence supporting the conviction was substantial. The code defines "[e]mergency veterinary treatment," in pertinent part, as veterinary treatment to "alleviate suffering . . . or prevent further disease progression." Code § 3.2-6500. Photographs entered into evidence showed the good condition of the horse before the appellant took charge of his care. The owner testified that the horse was in poor physical condition when she and her husband removed him from the appellant's property. She described his injuries and documented them with photographs, which were entered into evidence. The appellant also described the horse's injuries during her testimony. She testified that instead of having a professional provide care for the animal, she administered a prescription drug to him that was presumably prescribed for another horse. Reiners, the treating veterinarian, stated during the Commonwealth's case-in-chief that the horse was lame as a result of the injuries. He also testified that the injuries were about two weeks old at the time he treated them, that the delay in obtaining veterinary care prolonged the horse's suffering, and that the time lapse reduced the possibility of successful tendon repair. We conclude that in light of all of the evidence in the record, the error in allowing Reiners to remain in the courtroom during the appellant's testimony was harmless.

---

[7] We note that Reiners could have given the same testimony if the Commonwealth had asked the same facts in a hypothetical question. See, e.g., Rule 2:705(b); Burnette v. Commonwealth, 60 Va. App. 462, 482, 729 S.E.2d 740, 749 (2012) ("In a criminal case, an expert may give an opinion based on his 'own knowledge of facts disclosed in his testimony or . . . upon facts in evidence assumed in a hypothetical question.'" (quoting Simpson v. Commonwealth, 227 Va. 557, 565, 318 S.E.2d 386, 391 (1984))).

## III. CONCLUSION

We hold that the expert testimony that the horse's injuries required emergency veterinary care at the time that they occurred was not an opinion on the ultimate issue of fact. Further, although the trial court erred by allowing Dr. Reiners to return to the courtroom to listen to the appellant's testimony and then testify, we conclude that error was harmless. Therefore, we affirm the conviction for animal cruelty.

<u>Affirmed.</u>