STATE OF IOWA, appellee, v. GARY NOEL TROGDEN, appellant.

No. 51710.

(Reported in 139 N.W.2d 393)

JANUARY 11, 1966.

Ben E. Kubby, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and James McKeon, Assistant County Attorney, of Des Moines, for appellee.

LARSON, J.—Gary Noel Trogden was convicted of the crime of robbery with aggravation and sentenced to imprisonment in the penitentiary at Fort Madison for a term of 25 years. He assigns but one error, i.e., that the State failed to produce any competent evidence to corroborate the testimony given by an accomplice, Joseph Lee Brownell. The assignment has no merit.

The appellant, a pauper, requested and was permitted to file a copy of the trial transcript in lieu of the usual abstract of record. It contains almost a thousand pages, much of it not material to the issue raised in this appeal. We glean therefrom the following testimony bearing on the issue of corroboration.

The Trax Service Station, located in Polk County, Iowa, was the subject of an armed robbery on February 21, 1964, at about 10 p.m. The attendant Leonard was approached by a man in a "parka-like sweater or jacket", who pointed a gun at him and demanded money. A sum in excess of $200 and some station keys, identified as an exhibit herein, were taken. Leonard could not identify his assailant, but recalled a telephone call to Edgar Trogden, appellant's brother about 9:15 or 9:30 p.m. on the date of the robbery.

Edgar, a part-time station employee, testified appellant called him about ten minutes after nine (p.m.) and said: "How much money you got? * * * The place is going to be held up and if you say anything you will get killed too." Frightened, he left before the holdup.

Mr. Leonard's wife testified she entered the station about 9:50 p.m., witnessed the robbery, and identified appellant as the person she saw with the gun pointed at her husband. Officer McCloskey, a deputy sheriff, said her description of the robber, given shortly after the event, did not fit appellant, but she did not change her testimony.

Joseph Lee Brownell, who at the time of this trial was serving a 25-year sentence in the penitentiary for the armed robbery of this station and for perjury before the Grand Jury,

testified that earlier in the evening he, the appellant, and Bob Waters were at Brownell's home where they planned to rob the Trax station, that appellant made a phone call to his brother Edgar who worked there, that appellant drove the car to the station, that Brownell and Waters got out of the car and he went into the station. Waters remained outside as a "cover". Brownell said he took from Leonard a "wad of bills, a mess of change, and two keys to the station." He later threw the keys in a wash basin. He testified that during the course of the robbery the attendant's wife walked in, and that afterward he and Waters got in the waiting car and appellant drove them back home, they pretended to be working on the engine just in case officers were able to follow them.

Brownell further testified that after they cleaned up, Waters was taken home, that he and appellant drove to "Look Magazine" where they picked up three girls, and that "Frenchie", one of them, was dropped off at a tavern called the "Flying Saucer". Brownell said he heard appellant ask the girl to "set up the bar", which meant to find out what happened to the money at closing time. He said sometime later after the indictment against appellant had been dismissed and he had been released from jail, appellant told him he had arranged to have a cell mate, Chester Flora, take the "rap" for them in this case for $800.

Clarence Brownell, Lee's father, testified on the evening of the robbery, he heard his son's car leave the premises about 9:30 p.m., that appellant and Waters had been there with his son, that he later saw them about 10:30 p.m. and overheard his son ask appellant, "Do you reckon your brother will talk?" and appellant replied, "No, I had him too scared." He further said his son told him he held the gun and that appellant drove the car for the Trax job.

Chester Nelson Flora testified that while he was in the Polk County jail sometime after February 21, 1964, the appellant, Fred Lamp and some other prisoners, were present when appellant received notice of his indictment for the Trax robbery, that since appellant could not read he read the indictment to him, that appellant told him the details of this robbery, that appellant

offered him $800 if he would confess to it, and that since he needed the money for his wife he agreed, that thereafter he gave a statement to the police on April 2, 1964, admitting both the Trax robbery and another robbery at the Apco station on December 13, 1963. Lamp had given him the details of the Apco robbery. Flora's confession did obtain appellant's release at that time. Apparently Flora did not like the environment at the prison and retracted his confessions. When it appeared he had been in jail in Newton on the date of the Apco robbery, he was released, charged, convicted of perjury, and returned to the reformatory, where he now resides.

Fred Lamp, also confined in the jail with appellant in February 1964, testified he heard the appellant admit that he had committed the Trax station robbery, and that he was present and heard the conversation between appellant and Flora at the time of the indictment, including the offer of $800 if Flora would confess to the Trax job. He said appellant supplied Flora with the details of that robbery and he (Lamp) gave Flora the details of the Apco robbery. Lamp also admitted a dislike for appellant.

Randall Hollands, also confined in the jail at the time of the conversations between appellant, Flora and Lamp, testified he heard appellant tell Flora the details of the Trax robbery and make the offer of money if Flora would take the "rap." He said he was no personal friend of any of the parties and could not help it if his testimony hurt Trogden as he "didn't want to testify, period." He admitted he had been previously convicted of felonies.

Sonja Robinson, also known as "Frenchie", testified she met appellant and Lee Brownell shortly after midnight on February 22, 1964, that they picked her up at "Look Magazine" and let her out at the "Flying Saucer" tavern with directions that she find out where the owner kept the money after closing. She further testified she visited appellant in jail and he requested her to testify in court that he had picked her up two hours' earlier than he did on February 22, 1964. She said she agreed and later changed her mind.

The appellant testified in his own behalf. His story was

that he, Brownell and Waters, worked on Brownell's car on the evening in question, that he had called his brother, who was working at Trax, for the purpose of obtaining a loan, that he remained in the Brownell garage while Waters and Brownell went for a test drive, that they returned shortly after 10 p.m. and tore down the engine, and that they explained their action by saying they had robbed the Trax station. They threatened to implicate appellant if he informed anyone. He said later he and Brownell drove Waters home and then picked up the girls at "Look Magazine", but denied he let one of them out at the "Flying Saucer" with instructions to "set it up." He denied he had admitted this robbery to Flora and Lamp and denied he had requested Flora to confess to the Trax robbery. He also denied he had told Lee and Clarence Brownell that he had offered Flora money to confess, but admitted his relations with his brother Edgar, which had not been friendly, had been strained the week of the robbery.

Appellant's argument, that the State's chief witness was a party to the Trax robbery and thus an accomplice, has merit. His contention that the State failed to produce any competent evidence to corroborate the testimony given by accomplice Brownell and thus failed to connect him with the commission of the offense, as is required under section 782.5, Code, 1962, has no merit. The evidence was not only sufficient to submit to the jury on the corroboration issue, but we think, standing alone, without Lee Brownell's testimony, it would be sufficient to sustain a conviction of the offense of armed robbery as charged in the county attorney's information filed June 25, 1964.

I. Section 782.5 of the Code provides: "A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; * * *."

"An accomplice has been defined as one of several concerned in a felony; an associate in a crime; one who cooperates, aids, or assists in committing it." State v. Gates, 197 Iowa 777, 781, 197 N.W. 908, 910; State v. Bartlett, 128 Iowa 518, 105 N.W. 59. It must be established by a preponderance of the evidence that the witness was in fact an accomplice. State v.

Smith, 102 Iowa 656, 72 N.W. 279. These rules were cited with approval in State v. Tippett, 244 Iowa 1350, 1354, 60 N.W.2d 538.

Appellant admits there is such testimony in this record given by Flora, Lamp and Hollands, but contends they are all convicted felons and their testimony is entitled to little or no weight, at least not sufficient to support a conviction in this case. We cannot agree. Even though they may have lied in some details, this evidence does corroborate Brownell's testimony in many material respects and does connect appellant with that robbery either as the gunman or the driver of the get-away car.

██ ██ The credibility of the witnesses supplying the corroboration, as well as the weight to be given their testimony, is for the jury's consideration. State v. Patten, 191 Iowa 639, 182 N.W. 788; State v. Wehde, 226 Iowa 47, 49, 283 N.W. 104. In the latter case we said: "Proof that a witness has been convicted of a felony does not of itself impeach him, discredit his testimony or make him unworthy of belief."

██ II. It is true that evidence of corroboration is not sufficient if it merely shows commission of the offense, but it must tend to connect the defendant with the actual commission of the alleged crime. State v. Patten, supra, State v. Cotton, 240 Iowa 609, 641, 33 N.W.2d 880, and citations. Certainly the corroboration need not be as to every material fact, but it is sufficient, if it be such as to satisfy the jury, that the witness for whom corroboration is needed spoke the truth in some material part. State v. Patten and State v. Cotton, both supra. Obviously, the evidence here meets that requirement.

We cannot agree that the testimony of Mr. and Mrs. Leonard, standing alone, would have been insufficient to convict appellant. Although Mrs. Leonard incorrectly picked appellant in the lineup, she correctly described the dress of the gunman and placed defendant at the scene of the holdup. True, she had seen no car at the station and no "lookout" man nearby. However, the testimony of Flora, Lamp and Hollands, to say nothing of the testimony of Brownell's father and the girl "Frenchie", does, if believed, connect appellant with the robbery, places him at the scene of the crime, and makes him a participant in it.

Appellant's argument that since Flora and Lamp were also drug addicts, and regarded as mental cases, their testimony should not be given weight. We find no evidence which would sustain a factual finding that they were incompetent to testify. Certainly, as a matter of law it could not be so concluded. Perhaps their testimony was not entitled to much weight, but we are satisfied the issue was properly submitted to the jury. It could have believed Hollands for he was not connected with the others in any way or involved in local crimes. In any event the jury must have believed there was truth in the testimony of these cell mates, the father of Brownell, and the girl, and we are not disposed to question that judgment here.

III. Having found no reversible error we are convinced appellant had a fair trial and that the court's judgment should be affirmed.—Affirmed.

All JUSTICES concur.