Argued March 21, affirmed May 30, reconsideration denied July 26,
petition for review denied October 24, 1978, 284 Or 80a

STATE OF OREGON, *Respondent,*
*v.*
VERNON DALE WOOD, *Appellant.*
(No. 2227-C, CA 9000)

579 P2d 294

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

Defendant appeals from convictions of promoting prostitution, ORS 167.012(1)(c), and compelling prostitution, ORS 167.017(1)(b). He assigns as error the giving of an instruction on consent of the victim and the admission of his statement that prior charges of promoting prostitution had been dropped.

We take the facts largely from defendant's brief. Defendant was arrested on the present charges after an undercover police investigation of prostitution activity by defendant and two women, one of whom was 17 years old. The policemen and the two women testified for the state. Defendant and the younger woman, Sadler, had traveled from Yakima, Washington, to Ontario, Oregon, where they met the second woman, Roth, in a tavern. Roth agreed to let them spend the night at her apartment. That evening the three of them planned prostitution activities as a means of acquiring enough money to travel to Arizona. Both women engaged in acts of prostitution on the next day and gave half of the proceeds to defendant.

Two days later, Roth contacted the police because she wanted to terminate her prostitution activities and her relationship with defendant. She reported that defendant planned to make enough money that evening through prostitution for all three of them to leave for California the next day. That evening, by prearrangement, two undercover police officers, Thompson and Buchtel, met her and defendant at a bar, and the four went to her apartment, where Sadler was waiting.

Thompson accompanied Roth into a bedroom where they stayed for approximately 15 minutes. When Thompson came out of the bedroom he complained that it was not worth $20 and he would not pay. Defendant responded that Roth would make good. Eventually they returned to the bedroom, and Thompson paid her $20 when they re-entered the living room.

Meanwhile, in response to questions from Buchtel, defendant stated that the price for Sadler's services

[ 571 ]

was $20 and that Buchtel could pay Sadler. Buchtel and Sadler went into another bedroom and he paid her $20, which she later gave to defendant. Buchtel then started an argument with her so as not to "blow his cover." He re-entered the living room and complained that he had paid his money but it was not worth it. An argument with defendant ensued. At one point, defendant told Roth to give him his share and said, "I'll show you what my half means to me." She gave him two five dollar bills, which he burned in an ashtray. He then threw two ten dollar bills at Buchtel, apparently as a refund.

After the argument settled down, defendant and Buchtel went out to purchase more beer. While they were returning to the apartment, another officer stopped defendant's car. He advised the defendant of his Miranda rights and informed him that he was under arrest for promoting and compelling prostitution. Defendant denied those charges and made some statements indicating that Sadler was not a "hooker," that Roth was, that his association with them was innocent, and that he had spent the weekend working on his car. "At this point," the arresting officer testified, "he showed me a news clipping that he had been busted in Yakima, Washington on two counts of promoting prostitution. Charges were dropped as neither witness showed up for a hearing."

I

Defendant first contends that the court erred in instructing the jury that a person is considered incapable of consenting to a sexual act if he is under 18 years of age.[1] After the jury began its deliberation, it sent the court a note inquiring whether a minor's incapacity to consent to a sexual act meant that minority by itself was enough to establish compulsion

[1]The trial court has instructed the jury that to induce or cause an individual to engage in prostitution requires more than affording a mere opportunity to engage in such conduct and requires that the defendant influence, persuade, or prevail upon an individual to engage in prostitution.

under the statute. The inquiry was meaningful in light of state's and defendant's evidence that Sadler engaged in prostitution willingly and not under actual compulsion. The court reinstructed the jury that minority was not the only element of compulsion, that the state had to prove that defendant influenced, persuaded or prevailed upon Sadler to engage in prostitution, and that incapacity to consent was simply one factor in the minor's situation.

■■ The initial instruction, although a correct statement of the law, was an abstract means of instructing the jury that the minor's consent is not a defense to compelling prostitution under ORS 167.017(1)(b), which provides:

"(1) A person commits the crime of compelling prostitution if he knowingly:

"* * * * *

"(b) Induces or causes a person under 18 years of age to engage in prostitution * * *."

The purpose of this portion of the statute is to provide maximum protection for minors from the harmful, cumulative effects of a life of prostitution. It is based on the legislature's recognition that involvement in prostitution at an early age makes reform and rehabilitation more difficult. By way of illustrative contrast, subsection (1)(a) is intended to prohibit coercion of adults, but subsection (1)(b) is intended to prohibit "conduct that exploits the immature" regardless of coercion. Proposed Oregon Criminal Code, 242, Commentary, § 252 (1970). Accordingly, one who provides opportunity for a willing minor to engage in prostitution and influences, persuades or prevails upon her to do so has induced or caused the prostitution within the meaning of the statute regardless of her consent.

■■ An abstract instruction that correctly states the law is not ground for reversal of a conviction unless it appears to have misled or have been likely to mislead the jury to defendant's prejudice. *State v. Selby,* 73 Or

378, 389, 144 P 657 (1914). Here, the reinstruction correctly stated the applicable law and removed whatever confusion may have been caused by the court's initial instruction. Considered in their entirety, *State v. Schindler,* 20 Or App 400, 410-11, 531 P2d 915 *rev den* (1975), the instructions did not mislead the jury.

## II

Defendant next contends that the admission of the officer's testimony about the newspaper clipping and defendant's accompanying statement about previously dropped charges constitutes reversible error.

The state acknowledges that the evidence of other crimes was inadmissible, because it was not relevant to show anything which the state had a right to prove, *State v. Manrique,* 271 Or 201, 205-7, 531 P2d 239 (1975), and because it may imply "once a pimp, always a pimp." *Cf., State v. Treit,* 29 Or App 461, 465, 564 P2d 708 (1977). The state contends, however, that the error was harmless.

Error may be deemed harmless if there is substantial and convincing evidence of guilt and if we can conclude with reasonable certainty that, absent the error, a different verdict would not have resulted. *State v. Van Hooser,* 266 Or 19, 25-6, 511 P2d 359 (1973); *State v. Eaton,* 31 Or App 653, 657, 571 P2d 173 (1977). Here, four witnesses testified without substantial discrepancies about the events in the apartment. The evidence that defendant received or agreed to receive money from the women's prostitution activity is substantial and uncontradicted. Defendant's witnesses testified only to Sadler's willingness, a matter of negligible legal significance. Defendant's actions and statements in the apartment clearly indicated that he considered half of each woman's receipts to be his share. Therefore, we conclude with reasonable certainty that the jury would have found defendant guilty even if the evidence of his prior arrest had been excluded. The error was harmless.

Affirmed.