THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOLLIE MADISON, Defendant-Appellant.

Third District    No. 80-476

Opinion filed March 11, 1981.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial the defendant, Dollie Madison, was found guilty of pandering in violation of section 11—16(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—16(a)(2)). She was sentenced to a determinate term of 1½ years imprisonment.

The offense of pandering is defined as follows:

"Pandering.

(a) Any person who performs any of the following acts for money commits pandering:

(1) Compels a female to become a prostitute; or

(2) Arranges or offers to arrange a situation in which a female may practice prostitution." (Ill. Rev. Stat. 1979, ch. 38, par. 11—16(a).)

In the case at bar the indictment charged the defendant under subparagraph (a)(2) of the statute, alleging that she arranged a situation in which a female, Marcia Logue, might practice prostitution. On appeal the defendant contends that she was not proven guilty beyond a reasonable doubt where the evidence failed to establish that she arranged a situation in which Marcia Logue might practice prostitution. The defendant asserts that the evidence established only that she arranged a situation in which Marcia Logue might practice as an escort.

■■ We disagree. The evidence clearly establishes the type of managerial activities on the part of the defendant which constitute the essential elements of the crime of pandering.

The defendant's testimony established that she was in charge of Cherie's Escort Service and that she was responsible for all the money. When undercover police officer Loren Marion telephoned Cherie's Escort service at approximately 3 p.m. on December 11, 1979, from a room in the

Town House Motel, the defendant answered the phone and made the sales pitch and arrangements. The defendant stated that she offered a basic service for $75 and a liberal service for $100. The defendant then described the two girls working for her and told Officer Marion that he would not be sorry for calling Cherie's.

A few minutes later, the defendant returned the officer's call to state that she would arrive at his hotel room in 15 to 20 minutes. Within that span of time, the defendant arrived with Marcia Logue, whom the defendant introduced to Officer Marion as Amber. The defendant asked Marion if he wanted the basic or the liberal service. In response to his request for the liberal service, the defendant took $100 from him, in spite of the officer's request to pay the money to Amber. The defendant then explained that a tip was customary, and Officer Marion paid her another $10. The arrangements made between Marion and the defendant were that Amber was to spend one hour with Marion in the hotel room.

After the money was paid, Amber and the defendant held a brief discussion in the back room. According to their testimony, the liberal service allowed the "escort" to drink with a customer, and their discussion involved a warning to Amber from the defendant not to drink too much.

The defendant then left the motel room. No sex acts occurred between Officer Marion and Amber in the motel room, despite repeated requests by the officer. However, Amber asked the police officer to unbutton her dress and to remove it. The only other clothing she had on was a pair of pantyhose. At the request of Amber that he get comfortable, Officer Marion removed all of his clothing. Amber then laid down on the bed next to Marion. Although she would not agree to sex, she stated that Marion could do whatever he wanted to her but she would do nothing to him. Amber became angry when Marion would do nothing but place his hand on her stomach. Both of them dressed, and Officer Marion, with the assistance of backup officers, arrested Marcia Logue.

The defendant was arrested a few minutes later at Cherie's Escort Service. She had in her possession the money given to her by Officer Marion.

■▮■ From this evidence, we determine that the defendant's words and actions leave no reasonable doubt that she arranged a situation in which Marcia Logue, otherwise known as Amber, might practice prostitution. She did the arranging, and it is this type of management activity which the pandering statute prohibits. (*People v. McCall* (1977), 52 Ill. App. 3d 407, 367 N.E.2d 588.) Furthermore, it is the activity itself, and not its success, which is prohibited. (*People v. Russell* (1979), 69 Ill. App. 3d 59, 386 N.E.2d 1369.) The evidence in the case at bar was far from being so palpably unreasonable, improbable or unsatisfactory as to raise reason-

able doubt of the defendant's guilt of pandering. *People v. Johnson* (1978), 60 Ill. App. 3d 183, 376 N.E.2d 381.

Accordingly, we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.