STATE of Iowa, Appellee,

v.

Gilbert Mitchell WILLIAMS,
Jr., Appellant.

No. 65124.

Supreme Court of Iowa.

Jan. 20, 1982.

Mark J. Wiedenfeld of Grefe & Sidney, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., Dan L. Johnston, Polk County Atty., and Michael E. Hansen, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

Defendant, Gilbert Mitchell Williams, appeals from his conviction of pimping in violation of section 725.2, The Code, and pandering in violation of section 725.3, The Code. We affirm.

The facts of this case are essentially as follows. On August 27, 1979, Craig Hamilton, a Des Moines police officer, and Debbie Govi, a confidential informant with the Des Moines Police Department, were conducting a prostitution investigation. At approximately 7:00 p.m., pursuant to a prearranged plan, Govi was walking in the downtown area of Des Moines. Barbara Lee, a codefendant, and Susan Wadley confronted Govi and told her she could make a lot of money by engaging in prostitution. Lee and Wadley then introduced Govi to defendant, who discussed prostitution with her and eventually told her he wanted her to work for him as a prostitute.

After Govi's conversation with defendant, she and Hamilton went to the Des Moines Police Station, where Hamilton conferred with another officer and decided to strengthen the case against defendant before filing charges. Govi subsequently returned to the area where she met defendant and delivered a note requesting defendant to call her later. Govi then went to an apartment rented by the police department and awaited defendant's telephone call. During the call, which was tape recorded and introduced into evidence at trial, Govi expressed an interest in becoming a prostitute. Defendant, *inter alia*, told Govi that she could begin working whenever she was ready; described how to approach potential customers, what precautions to take, what to charge, and how her earnings would be divided with him; and said that he would provide her with protection. Govi agreed to meet defendant the following night.

The next evening Govi met Hamilton and other officers at the police station. The officers took Govi to the Nollen Plaza, where she met defendant. After a brief conversation, Govi walked around the plaza with Lee and Wadley. By prearrangement, Hamilton approached the three women and, posing as a potential customer, motioned for Govi to step aside. Hamilton then instructed Govi to tell Lee and Wadley that she had just been solicited for fifty dollars. Govi did so and asked the two women what she should do. They told her to take him to Room 214 at the Kirkwood Hotel. Hamilton accompanied Govi to the hotel room,

where they remained for approximately twenty minutes. While in the room, Hamilton gave Govi a marked fifty-dollar bill, but they did not engage in any sexual activity. Hamilton and Govi left the hotel room, and Govi returned to the plaza area and gave defendant the money. Defendant, Wadley, and Lee were then arrested by Hamilton and several other officers. Defendant had the marked bill and the key to the hotel room in his possession at the time of his arrest.

Defendant was tried jointly with Lee, who was charged with pandering for her role in the incident. *See State v. Lee*, 315 N.W.2d 60 (Iowa 1982). Defendant was convicted by jury verdict of pimping and pandering in violation of sections 725.2 and 725.3, The Code, respectively, and received the maximum sentence allowed by law, *see* § 902.9(4), The Code. Defendant contends: (1) the evidence is insufficient to support his conviction of either pimping or pandering; (2) the trial court erred in allowing admission of evidence of his prior felony conviction; (3) the evidence is insufficient to support a finding of absence of entrapment; (4) the trial court erred in refusing to allow him to introduce evidence of the State's amendment of and subsequent attempt to amend the trial information; (5) several incidents of prosecutorial misconduct deprived him of a fair trial; (6) the trial court improperly instructed the jury; and (7) the trial court abused its discretion by imposing too severe of a sentence and by failing to state on the record adequate reasons for the sentence.

I. *Sufficiency of the evidence.* Defendant contends the evidence is insufficient to sustain the jury's verdicts of guilty of either pimping or pandering because (1) both offenses require proof of actual prostitution and (2) even if they do not, the evidence is still insufficient to support a verdict of guilty of either charge. Defendant raised the first contention in a pretrial motion to dismiss the information and raised both contentions in a motion for a directed verdict during trial and again in a posttrial motion for a new trial. All of these motions were overruled.

A. *Pandering.* Section 725.3, The Code, provides:

> *A person who persuades or arranges for another* to become an inmate of a brothel, or *to become a prostitute, such person not having previously engaged in prostitution*, or to return to the practice of prostitution after having abandoned it, or who keeps or maintains a brothel or who knowingly takes a share in the income from a brothel, *commits a class "D" felony.*

(Emphasis added). Defendant was charged with and convicted of violating the italicized portion of this provision. He contends that by virtue of the terms "persuades" and "become" the statute requires the subject of the offense to actually become a prostitute. It is undisputed that undercover agent Govi never intended to become and did not become a prostitute.

In interpreting the meaning of the language at issue, we are guided by familiar rules of statutory construction. It is well established that penal statutes must give fair warning of the conduct prohibited, *State v. Price*, 237 N.W.2d 813, 815 (Iowa), *appeal dismissed*, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976), and are to be construed strictly, with doubts being resolved in favor of the accused. *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978). Since the strict construction rule is based on doubt, it will not be applied when it will defeat the obvious intent of the legislature. *State v. Powers*, 278 N.W.2d 26, 28 (Iowa 1979). In interpreting the meaning of a criminal statute, courts may properly consider the evil sought to be remedied and the purposes or objectives of the enactment. *State v. Sullivan*, 298 N.W.2d 267, 271 (Iowa 1980). Furthermore, the meaning of a statute may be "ascertained by reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage." *Id.* at 270. With these principles in mind, we turn to the provision at issue.

Section 725.3 provides that "[a] person who *persuades* or *arranges* for another . . . to become a prostitute" commits the crimi-

nal offense of pandering. (Emphasis added). Defendant focuses on the term "persuades"; he claims the term requires the subject of the offense to actually become a prostitute, and that defendant's conduct merely constituted an attempt to persuade. The State maintains that actual prostitution is not required by section 725.3. Dictionary definitions of "persuade" are not determinative, since the term, in proper context, may mean: to induce by argument into a position or conclusion; plead with, use persuasion upon, urge; or to demonstrate, prove, or bring about. *Webster's Third New International Dictionary* 1687 (1976). Defendant has not addressed the term "arranges." Arrange is defined as: to put in order; make preparations for, plan; come to an agreement or understanding about; or effect, usually by consulting. *Id.* at 120. While, as a matter of semantics, it may be argued that use of the terms "persuades" and "arranges" in section 725.3 makes the provision subject to more than one interpretation, we believe the legislature has given clear and fair warning of the conduct prohibited.

The obvious purpose of section 725.3, when read in its entirety, is to prevent the spread of prostitution by imposing punishment for those individuals who encourage commission of the crime. Since the statute is preventive, it would be anomalous for the legislature to require commission of the crime it sought to discourage. Accordingly, we hold that the legislature in using the terms "persuades" or "arranges" did not intend to require an act of actual prostitution as an element of the offense of pandering. Reflective of this intent is the fact that section 725.1, The Code, does not require an act of actual prostitution for a person to be guilty of the criminal offense of prostitution.[1]

Our holding is supported by other authority. One commentator states:

Under statutes which provide that it shall be unlawful to invite, solicit, or procure a female to have unlawful sexual intercourse, the solicitation constitutes the offense, even though the solicitation is unsuccessful, or no illicit intercourse results from the solicitation, since the gist of the offense is not alone the practice of prostitution, but also the spread of prostitution. The woman is not an accomplice, although she consents.

73 C.J.S. *Prostitution* § 7(b) (1951) (footnotes omitted). And other jurisdictions with comparable statutes prohibiting pandering or similar offenses hold that the crime is committed when the inducement is attempted and that an act of prostitution need not occur. *See, e.g., People v. Bradshaw,* 31 Cal.App.3d 421, 425, 107 Cal.Rptr. 256, 259 (1973) (under statute defining pandering as using any device to cause, induce, persuade, or encourage another to become prostitute, act of prostitution not necessary element of offense proscribed by word "encourage"); *People v. Madison,* 93 Ill.App.3d 922, 924, 49 Ill.Dec. 549, 418 N.E.2d 193, 194 (1981) (under statute defining pandering as arranging or offering to arrange situation in which female may practice prostitution, it is activity itself and not success thereof that is prohibited); *State v. Wood,* 34 Or. App. 569, 573, 579 P.2d 294, 296 (1978) (purpose of statute prohibiting inducing or causing person under eighteen years of age to engage in prostitution is to prevent prostitution, and one who provides *opportunity* to engage, persuades, or prevails upon such person is guilty of offense); *State v. Gates,* 118 Utah 182, 186, 221 P.2d 878, 880 (1950) (success not necessary component of statute that prohibited inducing, persuading, encouraging, inveigling, or enticing female to become prostitute: "It is the act of encouragement, persuasion or inveiglement which is forbidden").

We must still determine whether, under our holding, the evidence is sufficient to support the jury's verdict that defendant was guilty of pandering. The principles governing evidential sufficiency were

---

1. Section 725.1 provides that "[a] person who sells or *offers* for sale his or her services as a partner in a sex act, or who purchases or *offers* to purchase such services" commits the offense of prostitution. (Emphasis added).

recently discussed in *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981), and need not be repeated here.

We conclude the evidence is sufficient. Govi testified that defendant told her: he wanted her to work for him as a prostitute; he would supply her with drugs and clothes; that she would get sixty percent of the profits; and that he rented a hotel room for Lee and Wadley to take their customers to. In addition, during the taped telephone conversation defendant: told Govi that Lee and Wadley were having a good night and it was unfortunate that she was not with them; said that he let "a girl be her own boss"; reiterated the money arrangement and that he would buy her clothes; and assured Govi that he would be waiting downtown on the night of August 28 and that she could "go around" with Lee and Wadley. There was also evidence that the key to room 214 was obtained from defendant when Govi took Hamilton to the hotel room and that the room key and the marked money were in defendant's possession when he was arrested. This evidence was sufficient to convince a rational factfinder beyond a reasonable doubt that defendant persuaded or arranged for Govi to become a prostitute.

B. *Pimping.* Section 725.2, The Code, provides:

> A *person* who solicits a patron for a prostitute, or who knowingly takes or shares in the earnings of a prostitute, or *who knowingly furnishes a room or other place to be used for the purpose of prostitution, whether for compensation or not,* commits a class "D" felony.

(Emphasis added). Defendant was charged with and convicted of violating the italicized portion of this provision. He contends that it is an essential element of the offense that prostitution occur. He focuses on the term "knowingly" and insists that at minimum the term requires knowledge of a present existing fact that was impossible here because Govi never intended to use and did not use the hotel room for the purpose of prostitution.

■ For the reasons discussed earlier, we conclude the legislature did not intend to require that prostitution actually occur. We also conclude that the intent of the person for whom the room or other place is furnished is immaterial. The provision at issue is similar to section 2 of the Mann Act, which prohibited knowingly transporting a woman across a state line for illicit purposes. *See* 18 U.S.C. § 398 (1946), *current version at* 18 U.S.C. § 2421 (1976). Under that provision the purpose of the woman in making the journey was irrelevant; the issue was the purpose or intent of the person responsible for providing the transportation. *Mallory v. United States*, 126 F.2d 192, 193 (9th Cir. 1942); *Neff v. United States*, 105 F.2d 688, 691 (8th Cir. 1939).

■ Likewise, the intent or belief of the accused is the controlling factor under section 725.2. The offense is committed when a person furnishes a room or other place with the intent that it be used or belief that it will be used for the purpose of prostitution. It is immaterial that the person for whom the place is furnished had no intent to so use it or that for some other reason the place is not so used.

■ We also find no merit in defendant's contention that the evidence is insufficient to support the jury's verdict of guilty of pimping. As already noted, Govi testified that defendant told her he rented a room for Wadley and Lee to take their customers to. She also testified that after Hamilton had pretended to solicit her and she was asking Lee and Wadley what to do, defendant approached, observed Hamilton, and determined that Hamilton did not appear to be a vice officer. Although an assistant manager of the hotel testified that room 214 was registered to Wadley on August 27 and that he was unable to determine from the hotel's records to whom the room was registered on August 28, defendant conceded that the key was taken out of his pocket when Govi and Hamilton went to the room. Furthermore, the key was in defendant's possession at the time of his arrest. We hold that this evidence is sufficient to convince a rational jury beyond a reasonable

doubt that defendant knowingly furnished a room to be used for the purpose of prostitution.

II. *Admission of evidence of prior felony conviction.* In November 1977 defendant was convicted by guilty plea of breaking and entering in violation of section 708.8, The Code 1977. That provision provided:

> If any person, *with intent to commit any public offense*, in the daytime break and enter, or in the nighttime enter without breaking, . . . he shall be imprisoned in the penitentiary not more than ten years. . . .

(Emphasis added). Violation of section 708.8 constituted a felony. § 687.2, The Code 1977.

Prior to trial in the present case, defendant filed a motion in limine seeking to exclude from the jury any reference to his prior conviction. In ruling on the motion, the trial court stated: "Well, I'm going to sustain the Motion in Limine as to the criminal record of Gilbert Williams unless he takes the stand, and then, of course, it's a matter for impeachment if he has a felony that goes to his honesty and truthfulness as a properly admissible item."

Defendant testified at trial. During cross-examination the prosecutor inquired: "Now Mr. Williams . . . were you convicted of a felonious crime?" Defense counsel objected and moved for a mistrial. A hearing was then held outside the presence of the jury. There was some confusion concerning the precise nature of the charge to which defendant pled guilty. Although the prosecutor stated defendant was convicted of breaking and entering with intent to commit theft, neither the information charging defendant nor the court order adjudging him guilty specified the public offense defendant intended to commit. Subsequently, the prosecutor stated: "I wish to make a professional statement to the Court. I just called up . . . the attorney that represented this Defendant in the burglary charge and he stated that the charge was Breaking and Entering with Intent to Commit a Public Offense: to-wit, theft." After admonishing the prosecutor that if his professional

statement were not correct there would be a mistrial, the court allowed evidence of defendant's prior conviction.

Section 622.17, The Code, provides: "A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof." In *State v. Martin*, 217 N.W.2d 536, 542 (Iowa 1974), this court held that

> for the purpose of attacking the credibility of any witness, including an accused under Code § 622.17, evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved dishonesty or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors.

Defendant contends the trial court erred in allowing the evidence of his prior conviction. He argues that breaking and entering itself is not a felony involving dishonesty or false statement. Apparently relying on the lack of specification in the information and court order of the public offense defendant intended to commit, defendant contends that the intent requirement of section 708.8, The Code 1977, could have been applicable to an offense not involving dishonesty. In essence, he claims that the State did not meet its burden of establishing the admissibility of this evidence.

The State must, when proper objection is made, establish that an inquiry calls for admissible evidence. "[W]here there is a preliminary question of fact to be decided before evidence is to be admitted, the burden of proving the preliminary fact rests on the proponent of the subject evidence." 31A C.J.S. *Evidence* § 103 (1964). Thus, it was incumbent on the State to establish defendant was convicted of a felony involving dishonesty.

In his professional statement, the prosecutor stated the public offense defendant intended to commit was theft. "The term

'professional statement' . . . means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue." *Cogley v. Hy Vee Food Stores, Inc.*, 257 Iowa 1381, 1386–87, 137 N.W.2d 310, 313 (1965).

It is a technique, used as a matter of convenience and practical necessity to establish a record of matters peculiarly within the knowledge of an attorney. In offering a professional statement an attorney pledges the honor of his profession and his personal integrity. It has the effect of an affidavit.

*State v. Brewer*, 247 N.W.2d 205, 212 (Iowa 1976) (citations omitted).

 Having the status of an affiant, an attorney who has made a professional statement is subject to cross-examination as to the factual matters asserted in the statement. *Cogley*, 257 Iowa at 1387, 137 N.W.2d at 313. Defendant did not cross-examine the prosecutor, however; nor did he proffer any objection to the professional statement.

 We hold that the trial court did not abuse its discretion in basing its determination that defendant's prior felony conviction involved dishonesty on the prosecutor's professional statement. Our holding is supported by a certified copy of the transcript of defendant's plea proceeding, which was filed in resistance to defendant's motion for a new trial. The transcript reveals that prior to accepting defendant's guilty plea, the court asked defendant what intent he had when he perpetrated the breaking and entering. Defendant admitted that he intended to get something for the purpose of making money. This sufficiently establishes that defendant's breaking and entering constituted a felony involving dishonesty. *See State v. Webb*, 309 N.W.2d 404, 413 (Iowa 1981) (breaking and entering with intent to commit larceny involves dishonesty); *State v. Conner*, 241 N.W.2d 447, 455 (Iowa 1976) ("Felonies involving theft reflect on veracity").

Defendant also maintains that the trial court did not make a determination whether the probative value of defendant's conviction was substantially outweighed by the danger of unfair prejudice, as required by *Martin*. We find no merit in this contention. The trial court expressly concluded that *Martin* was broad enough to cover the conviction. Our review of the record reveals that the trial court followed the criteria laid down in *Martin*.

 The trial court limited the inquiry to whether defendant had been convicted of a crime and his answer. The court also instructed the jury that evidence of a prior felony conviction is a method "of impeaching witnesses and discrediting their testimony, and should be considered for no other purpose." Accordingly, we find no abuse of discretion on the part of the trial court in allowing evidence of defendant's prior conviction.

III. *Entrapment.* During trial defendant asserted that he was a victim of entrapment with respect to the crimes charged. He contends the State failed to prove the absence of entrapment beyond a reasonable doubt and that the trial court erred in overruling his motions for a directed verdict of acquittal and for a new trial on that ground.

In *State v. Mullen*, 216 N.W.2d 375, 382 (Iowa 1974), this court adopted an objective standard that defines the defense of entrapment as follows:

Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normal law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Defendant maintains that the evidence was not sufficient to sustain the jury's verdict, and the trial court erred in not finding entrapment as a matter of law. In *Mullen* we held that "the trial court shall determine the question as a matter of law where

there is no dispute as to the facts or the inferences to be drawn from them." *Id.*

Our review of the record reveals that the evidence does not establish as a matter of law that the activities of the law enforcement agents were sufficiently provocative to induce a normally law-abiding person to commit the crimes of pimping or pandering; the evidence is sufficient to support the jury's finding of no entrapment. Although Govi was conducting a prostitution investigation, Lee and Wadley initiated the initial contact and offered to introduce her to defendant. And while Govi, somewhat hesitantly, expressed an interest in becoming a prostitute, she did not employ fraudulent or strongly persuasive tactics. It is well settled that the government may employ " 'artifice and strategem' to apprehend those engaged in criminal activity." *State v. Leonard*, 243 N.W.2d 75, 80 (Iowa 1976). The jury could have concluded that the law enforcement agents' conduct merely afforded defendant an opportunity to commit the offenses charged. Viewing the evidence as required by *State v. Robinson*, 288 N.W.2d 337, 338–40 (Iowa 1980), we hold that the evidence was sufficient for a rational factfinder to find absence of entrapment beyond a reasonable doubt.

IV. *Admissibility of evidence of the State's amendment of and subsequent attempt to amend the trial information.* Section 725.2, The Code, specifies three alternative modes by which the offense of pimping may be committed: (1) soliciting a patron for a prostitute; (2) knowingly taking or sharing in the earnings of a prostitute; and (3) knowingly furnishing a room or other place to be used for the purpose of prostitution. The State's original trial information charged defendant with pimping by "knowingly tak[ing] or shar[ing] in the earnings of a prostitute." Subsequently, the trial court, over defendant's objection, sustained the State's motion to amend the charge by deleting that language and substituting "knowingly furnish[ing] a room or other place to be used for the purpose of prostitution." Prior to jury selection, the State

moved to amend the information again to charge all three alternative methods of committing the pimping offense. The trial court overruled this motion as untimely.

Immediately prior to trial defense counsel, by offer of proof, informed the court that defendant desired to introduce evidence of the amendment of and subsequent attempt to amend the trial information. The court ruled that these items were inadmissible. Defendant claims the trial court erred because these items were relevant and admissible evidence that was crucial to his case and that he was prejudiced by the ruling. He maintains that the evidence was relevant to show the State did not know how to handle the case and, when added to other testimony, would have shown the State was uncertain whether a crime had been committed.

We find no merit in defendant's contentions. The fact that the State amended the trial information and unsuccessfully attempted a second amendment was not evidence that was material to determining defendant's guilt or innocence of the charge of pimping. To be material, evidence must be pertinent to or probative of a matter in issue. *Vine Street Corp. v. City of Council Bluffs*, 220 N.W.2d 860, 862 (Iowa 1974); *McCormick's Handbook of the Law of Evidence* § 185, at 434 (2d ed. E. Cleary 1972). Materiality of evidence is a matter committed to the discretion of the trial court. *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 288 (Iowa 1979). Whether the State in fact had difficulty with the case or was uncertain that a crime had been committed were not in issue in the case; the proffered evidence had no bearing on the elements of the pimping charge, which the State was required to prove beyond a reasonable doubt. *See* Iowa R.Crim.P. 21(9)(a). The trial court therefore did not abuse its discretion in holding the evidence inadmissible.

V. *Prosecutorial Misconduct.* Defendant contends that during the course of the trial the prosecutor committed acts of misconduct that individually and in sum were so prejudicial that they deprived him of a

fair trial. He maintains the trial court erred in overruling his motions for mistrial and for a new trial on this ground.

■■■■ Prosecutorial misconduct does not require a new trial unless it appears to have been so prejudicial as to deprive the defendant of a fair trial. *State v. Lyons*, 210 N.W.2d 543, 549 (Iowa 1973); *State v. Harless*, 249 Iowa 530, 536, 86 N.W.2d 210, 213–14 (1957), *cert. denied*, 357 U.S. 908, 78 S.Ct. 1154, 2 L.Ed.2d 1158 (1958). Trial courts are vested with broad authority to determine whether prejudice results from prosecutorial trial misconduct. *State v. Vickroy*, 205 N.W.2d 748, 750 (Iowa 1973). We intervene only when the trial court abuses this discretion. *State v. Trudo*, 253 N.W.2d 101, 106 (Iowa), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977). "Abuse of discretion is shown only when it is demonstrated that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* With these principles in mind, we will examine defendant's claims.

■■■■ A. *Defendant's employment record.* Defendant concedes that he had a poor employment record and was unemployed at the time of his arrest. Prior to trial the trial court sustained defendant's motion in limine to prevent evidence of his employment record. In cross-examining defendant, the prosecutor asked if Lee and Wadley were his girls and whether it was not a fact that they worked in his "stable." Defendant answered in the negative but admitted that Lee was his girlfriend. The prosecutor then asked:

Q. And you just happened to be pimping for her . . ., isn't that true?

[objection made and sustained]

Q. You say you just happened to be following her around and providing her and Sue Wadley this room, etcetera, just because you're a nice guy?

[objection made and sustained]

Q. Well, isn't it a fact you live off Barb Lee and Sue Wadley's income?

A. No.

Q. Well, where do you work?

Defendant objected to the question on the grounds that it was irrelevant, immaterial, and had been taken up prior to trial. The trial court sustained the objection, and cross-examination continued.

After defendant rested, he moved for a mistrial, citing the violation of the motion in limine as one of the grounds therefor. The court asked the prosecutor if he had any response. The prosecutor stated: "I do remember the motion in limine, but I was going to show he didn't work downtown and shouldn't have been down there." The trial court advised the prosecutor that the question was improper but determined that prejudice did not result and overruled defendant's motion.

The prosecutor's question was improper in view of the ruling on defendant's motion in limine. And the explanation of his reason for asking the question is totally unacceptable. However, defendant has not persuaded us that the question was so prejudicial as to deprive him of a fair trial. Defendant's objection was sustained, and the question was therefore not answered. We find no abuse of discretion by the trial court.

B. *Comment on witness' testimony.* Susan Wadley testified as a defense witness. On cross-examination the prosecutor asked: "Well, isn't it a fact that both you and Barbara Lee . . . told Miss Govi that it was easy money and tax free?" The witness answered: "No, we did not say it was easy money and tax free." The prosecutor then stated: "That's a mistake." Defense counsel objected, and the prosecutor responded: "I'll withdraw it your Honor. I didn't mean to say it." The trial court then admonished the jurors that they should disregard the prosecutor's statement.

■■■■ Again, the prosecutor's statement was clearly inappropriate. In examining a witness, an attorney should not assert an opinion as to the witness' credibility. *See Iowa Code of Professional Responsibility for Lawyers* DR 7–106(C)(4). The general rule, however, is that improper testimony, or in this case improper comment on a witness' testimony, is not unduly prejudicial

if the court admonishes the jury to disregard it. *State v. Burrell*, 255 N.W.2d 119, 122 (Iowa 1977). Only in those exceptional cases in which the prejudicial effect of such a comment cannot be eliminated will an admonition of the court be found insufficient. *State v. Mattingly*, 220 N.W.2d 865, 870–71 (Iowa 1974). We do not believe the prejudicial effect of the prosecutor's statement was such that it was not eliminated by the trial court's admonition. Accordingly, we find no abuse of discretion.

■ C. *Identification of codefendant.* During direct examination of Govi, the prosecutor asked if codefendant Barbara Lee was in the court room. After receiving an affirmative response, the prosecutor asked Govi: "Will you please come down and put your hand over her—" An objection was interjected by defense counsel for the codefendant at that point, and the trial court stated that the witness could identify the codefendant from the witness stand. Defendant describes the prosecutor's conduct as unnecessary and inflammatory.

We do not believe defendant was in any way prejudiced by the prosecutor's statement, especially in view of the fact that the trial court sustained the codefendant's objection and identification took place from the witness stand.

■ D. *Inciting defendant, facial expressions, and comment during final argument.* During trial an assistant manager of the hotel where Govi took Hamilton for the alleged purpose of prostitution was called as a defense witness. He testified that room 214 was registered to Susan Wadley on August 27 and checkout occurred on August 28. On cross-examination the prosecutor stated: "Could you please take a look at this gentleman right here, and I'd just ask you one thing; does this look like a Sue?" Defendant alleges that as the prosecutor was speaking he walked over to defendant and placed his hand on defendant's shoulder. Defendant contends the prosecutor was attempting to incite him to make some movement or facial expression in front of the jury to his prejudice.

In addition, defendant contends that the prosecutor smiled and made disbelieving facial expressions during Wadley's testimony. He argues that these were improper antics designed to convey the prosecutor's opinion of the witness' credibility.

Defendant also maintains the prosecutor made a prejudicial statement during final arguments. Final arguments were not recorded, however, and defendant did not avail himself of the opportunity to make a record of the alleged misconduct. Although defendant's posttrial motions quoted what the prosecutor allegedly stated, the State's resistance to the motions contended the quote was a misstatement.

These claims of prosecutorial misconduct are difficult to review without a better record. The trial court had the opportunity to observe and hear the matters complained of and ascertain their effect, if any, on the jury. Discretion is accorded to the trial court in this area because of its proximity to the conduct; it is in a better position than an appellate court to make a determination in accordance with the demands of justice. On the record before us, we find no abuse of discretion by the trial court on these matters.

■ We have concluded that none of the alleged acts of prosecutorial misconduct were so prejudicial individually as to deprive defendant of a fair trial. We must still determine the effect of this conduct when considered in sum.

While the prosecutor unexcusably went beyond the limits of proper prosecutorial conduct on several occasions, "it is not a prosecutor's misconduct which entitles defendant to a new trial; it is the prejudice which results therefrom and which prevents the trial from being a fair one." *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976). We have carefully reviewed the record. There is substantial evidence of defendant's guilt, which may be taken into account when considering the prejudicial effect of prosecutorial misconduct. *Id.* We conclude that, even when considered collectively, the prosecutor's conduct did not deprive defendant of a fair trial. Accordingly, we find no

abuse of discretion on the part of the trial court.

VI. *Propriety of jury instructions.* Defendant maintains the trial court improperly instructed the jury and committed error by failing to submit several instructions he requested.

A. *Reference to trial information.* The statement accompanying the instructions advised the jury:

> On the 25th day of September, 1979 a Trial Information was filed against the defendant, Gilbert Williams, Jr., accusing him in Count I of Pimping as defined in Section 725.2 of the 1979 Code of Iowa and charged that on or about the 28th day of August, 1979, in Polk County, Iowa, he did knowingly furnish a room or other place to be used for the purpose of prostitution.

Defendant contended that the statement was inaccurate because the trial information filed on September 25 charged him with pimping by sharing in the earnings of a prostitute. He requested the trial court to correct the alleged inaccuracy by stating the original charge and that it was amended on February 11 or by referring to the information throughout the instructions as the amended trial information.

In division IV we held that evidence of the State's amendment to the trial information was inadmissible. Instructions should be tailored to meet the evidence. *State v. Whiteside,* 272 N.W.2d 468, 471 (Iowa 1978). Furthermore, instructions must conform to the charges contained in the indictment or information. *See State v. Alexander,* 169 N.W. 657, 659 (Iowa 1918) (per curiam). By virtue of the amendment, the information no longer charged defendant with sharing in the earnings of a prostitute. Hence, we find no error.

B. *Solicitation/accomplice instruction.* Defendant claims Govi was a solicited person with respect to both the pimping and pandering charges and an accomplice with respect to the pimping charge. He contends the trial court erred in refusing to instruct the jury that he could not be convicted unless her testimony was corroborated.

Iowa R.Crim.P. 20(3) provides:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offenses; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Govi was clearly not an accomplice of defendant.

> An accomplice is a person who willfully unites in, or is in some way concerned in the commission of a crime. The general rule for determining whether a witness is an accomplice is if he could be charged with and convicted of the specific offense for which an accused is on trial.

*State v. Jennings,* 195 N.W.2d 351, 356 (Iowa 1972). "It must be established by a preponderance of the evidence that the witness was in fact an accomplice." *State v. Trogden,* 258 Iowa 574, 578, 139 N.W.2d 393, 395 (1966). There is no evidence in the record that Govi could be charged with and convicted of the offenses of pimping and pandering. Hence, she was not an accomplice under rule 20(3).

This court has not previously construed the meaning of "solicited person." The term did not appear in section 782.5, The Code 1977, the predecessor of rule 20(3), but was added by the legislature in enacting the new Iowa Criminal Code. *Cf.* § 782.5, The Code 1977 (corroboration of accomplice) *with* § 813.2, Rule 20(3), The Code Supp. 1977 (corroboration of accomplice or solicited person). The inclusion of this term coincided with the legislature's adoption of the crime of solicitation, § 705.1, The Code. Section 705.1 provides in pertinent part:

> A person who commands, entreats, or otherwise attempts to persuade another to commit a particular felony or aggravated misdemeanor, with the intent that such act be done and under circumstances which corroborates that intent by clear and convincing evidence, solicits such oth-

er to commit that felony or aggravated misdemeanor.

Iowa had not previously had a general solicitation statute. When the provision was being drafted concern was expressed that a solicitation statute could prove to excessively restrict free speech, permit prosecution for frivolous or casual statements that were not intended to be taken seriously, or otherwise be subject to abuse. 4 *Iowa Practice* § 102 (J. Yeager & R. Carlson 1979). Less serious misdemeanors were thus omitted from the statute's coverage, a provision was added requiring corroboration of intent by clear and convincing evidence, and a separate provision for renunciation was added, *see* § 705.2, The Code. 4 *Iowa Practice, supra,* at § 102.

■ The concerns expressed during the drafting of section 705.1, the corroboration requirement of that provision, and the fact that the enactment of section 705.1 coincided with the inclusion of the term "solicited person" in a provision theretofore applicable only to accomplices, warrant the conclusion that the legislature intended the term "solicited person," as used in rule 20(3), to apply only when the defendant has been charged with solicitation.

■ Generally, the credibility of witnesses and the weight to be given their testimony is the sole province of the jury. Rule 20(3), by requiring corroboration of the testimony of an accomplice or solicited person, represents an exception to the general rule. There is a two-fold purpose for requiring corroborating evidence of an accomplice's testimony: (1) to connect the defendant with the commission of the crime, and (2) to add credibility to the accomplice, whose believability is severely eroded by involvement in the matter and obvious self-interest in focusing the blame on the defendant. *State v. Cuevas,* 281 N.W.2d 627, 629 (Iowa 1979). Similarly, confessions are to be viewed with caution, since they are frequently the product of coercion, threats, or promises. *State v. Shomaker,* 303 N.W.2d 129, 130 (Iowa 1981). Therefore, a defendant's confession, unless made in open court, must be accompanied by other proof that the defendant committed the offense. Iowa R.Crim.P. 20(4).

The dangers that exist when an individual is prosecuted for solicitation are comparable. *See* 4 *Iowa Practice, supra,* at § 102. Normally, there will be no tangible evidence of commission of the offense; the evidence will consist of testimony of the person solicited. The requirement of corroborating evidence ensures that a conviction will not result from an accused's statements that were misunderstood or not intended to be taken seriously or upon fabricated testimony of the person allegedly solicited.

■ The requirement of corroborating evidence, being an exception to the general rule, is dictated by and normally limited to specific circumstances in which the credibility of evidence is deemed questionable in the absence of other, supportive evidence. We perceive no legislative intent underlying the enactment of rule 20(3) to require corroboration whenever conduct that may be described as "solicitous" has occurred. Accordingly, we hold that the term "solicited person" in rule 20(3) is applicable only when the accused is charged with the offense of solicitation under section 705.1, The Code. Here, defendant was not charged with solicitation. Govi was therefore not a "solicited person" within the meaning of rule 20(3), and her testimony did not have to be corroborated.

Since Govi was neither a solicited person nor an accomplice, the trial court did not err in refusing to submit his requested instruction to the jury.

C. *Pimping and pandering instructions.* Defendant asserts the trial court erred in instructing the jury on the pimping and pandering charges because the court's instructions failed to state that those charges required proof that Govi actually became a prostitute.

In division I of this opinion we held that neither of these offenses require proof that an act of prostitution actually occurred. Accordingly, we find no error.

■ D. *Continuous transactions instruction.* The trial court submitted to the jury instruction 14, which stated:

There has been evidence admitted regarding other offenses alleged to have occurred in which the defendants were involved. They are not on trial for any offenses except those named in the Information, and you may not and should not consider or speculate on whether they are guilty or innocent of any other offenses.

However, the law permits such evidence when the other offenses and those offenses with which the defendants are charged form an inseparable part of the whole act and are so intimately associated with each other that they form a continuous transaction and the other offenses can reasonably be said to establish the offense charged.

This instruction is substantially identical to II *Iowa Uniform Jury Instructions Ann.* No. 231 (1978). Defendant objected to the second paragraph of the instruction. He contends there was no evidence of any other offenses committed by defendant forming an inseparable part of the offenses of pimping and pandering.

Defendant's contention is misconceived. Defendant did not except to the first paragraph of the instruction. The second paragraph is merely an explanation of why conduct that may constitute a criminal offense not charged in the information is admissible.

There was evidence at trial that defendant offered to supply defendant with marijuana and cocaine. *See* § 204.401(2), The Code. Furthermore, Wadley testified that she and Lee, a codefendant at trial, were involved in prostitution on August 27 and 28 and that Lee was a prostitute. Prostitution is a criminal offense under section 725.-1, The Code. Since there was evidence of other criminal conduct, the trial court did not err in submitting instruction 14 to the jury.

VII. *Sentence.* Defendant received the maximum sentence allowed by law for both offenses of which he was convicted: five years imprisonment and a $1000 fine for pimping and five years imprisonment and a $1000 fine for pandering, the prison terms to be served concurrently. *See* § 902.9(4), The Code. Defendant contends the trial court abused its discretion by imposing too severe of a sentence and failing to state on the record adequate reasons for the sentence.

Iowa R.Crim.P. 22(3)(d) requires the trial court to "state on the record its reason for selecting the particular sentence." At defendant's sentencing proceeding, the trial court stated:

[T]he Court has taken into consideration the facts of the crime, the history of the defendant and the maximum sentence allowed by law, and it is this Court's finding that granting of probation in this case would unduly depreciate the seriousness of the offense and that it is unwarranted in order to protect the public from further criminal activity by the Defendant and that Defendant is in need of correctional treatment which can be most effectively provided by total confinement.

The stated reasons are supported by the trial record and the presentence investigation; they articulate the rationale underlying the sentence, *see State v. Luedtke*, 279 N.W.2d 7, 8 (Iowa 1979), and are appropriate and sufficient to meet the requirement of rule 22(3)(d), *see State v. Killpack*, 276 N.W.2d 368, 372–73 (Iowa 1979) (majority opinion and McCormick, J., concurring specially).

■ When the sentence imposed is within the statutory maximum, we will not interfere unless the record discloses an abuse of discretion by the sentencing court. *State v. Inger*, 292 N.W.2d 119, 126 (Iowa 1980); *State v. Noonan*, 246 N.W.2d 236, 237 (Iowa 1976). We recently stated:

"The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punish-

ment should fit both the crime and the individual."

*State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979) (quoting *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967)). The trial record and presentence investigation reveal that defendant has had a history of criminal conduct and that most of the factors reflect unfavorably on him. We find no abuse of discretion by the trial court in imposing the maximum sentence allowed by law.

We have thoroughly reviewed all of defendant's contentions and find no merit in his assignments of error. We therefore affirm the judgment and sentence of the trial court.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Judge (concurring specially).

I concur in the result and all of the opinion except the basis of division IA. I would hold that the legislature's alternative use of the word "arranges" in section 725.3 authorizes a conviction of pandering without proof of an act of prostitution. The word "persuades" does not alone do so.