UNITED STATES, Appellant

v

BILLY E. GENTRY, Private, U. S. Army, Appellee

8 USCMA 14, 23 CMR 238

No. 9356

Decided May 10, 1957

*Captain Thomas J. Nichols* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

*First Lieutenant Gene E. Overbeck* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Frank C. Stetson.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted by a general court-martial of conspiring with another enlisted man to commit pandering and for unlawfully receiving money on account of arranging for four soldiers to engage in intercourse with a prostitute, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 USC §§ 881 and 934, respectively. His sentence was dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The convening authority approved the finding of guilt but mitigated the dishonorable discharge to a bad-conduct discharge and reduced the period of confinement from one year to six months. A board of review in the office of The Judge Advocate General of the Army set aside the findings and sentence and ordered the charges dismissed.

The board held that the facts proved at the trial did not establish the offense of pandering or any lesser included offenses under Article 134 of the Code within the fair confines of the specifications. On certificate for review, The Judge Advocate General of the Army asks us to settle the question of whether the board was correct in its holding.

The specifications which set out the particular offenses read as follows:

"In that Private Billy E. Gentry, U. S. Army, Heavy Mortar Company, 29th Infantry Regiment, temporary duty with 43rd Company, 4th Student Battalion, The School Brigade, did, at Fort Benning, Georgia, on or about 30 April 1956, conspire with James B. Guthrie to commit an offense under the Uniform Code of Military Justice, to wit: pandering, and in order to effect the object of the con-

15

spiracy the said Billy E. Gentry did carry George E. Vadovsky, Lawrence J. Barnes, Daniel V. Hale, and Frank W. Leonard Jr. to a house of prostitution.

"In that Private Billy E. Gentry, U. S. Army, Heavy Mortar Company, 29th Infantry Regiment, Temporary duty with 43rd Company, 4th Student Battalion, The School Brigade, did, near Fort Benning, Georgia, on or about 1 May 1956, wrongfully and unlawfully receive valuable consideration, to wit: about $10.00, on account of arranging for Privates George E. Vadovsky, Lawrence J. Barnes, Daniel V. Hale and Frank Leonard, Jr., to engage in sexual intercourse with a prostitute."

Because the solution of the certified questions depends primarily upon our affirming the findings of guilt of the crime alleged in the second specification, we turn our attention to that charge. It is to be noted that the allegations of the specification, with appropriate deletions and insertions, compares in all material respects with model specification number 157, Manual for Courts-Martial, United States, 1951, Appendix 6c, page 493. Accordingly, it pleads a kind of pandering recognized by the draftsmen of the 1951 Manual as constituting a military offense under the general Article. While the model specification is only a guide, we believe it is sufficiently detailed and complete to cover all of the essential elements of a crime against the military community. We, therefore, agree with the board of review that an offense is pleaded.

Having concluded the pleadings are in order, we pass on to consider whether the board resolved the factual issues in a proper and legal manner. The board found that the accused had arranged to transport one or more soldiers to a place where prostitutes were plying their trade but that he did not arrange for the sexual intercourse. It was the belief of the board that the term "arranging for" in model specification number 157, supra, requires that some sort of agreement be shown between the accused and the prostitutes involved. The Government not only conceded before the court-martial and the board of review that there was no showing of such agreement in this case, but it stipulated at trial that accused had no understanding or arrangement with the prostitutes.

While pandering is not defined by the Code or the Manual, we find that the model specifications numbered 156 and 157 set forth in Appendix 6c, of the Manual may be compared with the District of Columbia pandering statute. Counsel for the parties are in dispute as to the applicability of that act but at this time, we need not decide whether that statute defines the crime of pandering for purposes of military law, for in this instance we may take it for granted that such is the case. That act provides, in pertinent part, that one "arranging for" a female to have sexual intercourse with any other person or to engage in prostitution for money is guilty of pandering. District of Columbia Code, 1951, § 22–2707. A close reading of the statute makes it quite apparent that the offense may be committed by arranging for a female to have intercourse with any other person or arranging for her to engage in prostitution for money, but it is silent as to any arrangement with prospective patrons. The sweep of that statute was considered by the Court of Appeals for the District of Columbia in Byas v United States, 182 F2d 94 (CA DC Cir) for it was there contended by counsel for the defendant that arranging for was synonymous with procuring a female. A similar argument is made here by the accused. However, that contention was considered unsound by the Court of Appeals for it reasoned that when Congress amended the previous statute and substituted the phrase "arrange for" for the word "procure," it disclosed an intent to have the amended statute embrace many more activities within its scope than did its predecessor. Byas v United States, supra. The board of review in this instance accepted the rule in the Byas case but concluded that even though the term "arrange for" was wide in scope, it could not be broadened to include accused's activities in the

16

instant case, since there was no evidence that he did more than solicit soldiers to ride with him for pay to a house of prostitution, with knowledge that illicit intercourse would in all probability be accomplished by them there. The rationale of the board with which we concur is best expressed in that part of its opinion which states that the accent of the District statute is on arranging with a female. That seems to us to be the thrust of model specification 156 but that is not to say that 157 may not point in a different direction for it is reasonable to assume that the latter specification was intended to cover a different situation. However, there are limits beyond which it cannot be extended and we are certain it was not intended to encompass all acts which might make it easier for another to engage in illegal intercourse. In the final analysis, there is a wide gulf between arranging to transport patrons to a destination which may be a house of prostitution and prearranging with the women to have intercourse with the patrons after they arrive.

Obviously, as will be later made more certain, accused solicited and made arrangements for transporting the four recruits. The word "arrange" is defined in Webster's New International Dictionary, 2d ed, page 152, as follows: "To adjust or settle; esp., to settle by prior agreement or plan; . . . To come to an agreement, understanding, or settlement; esp., to agree or settle details in advance; as, to *arrange* about transportation, or for an appointment." At first glance it might appear that accused had arranged for intercourse with prostitutes and that his delict could be equated to pandering for he did by prior arrangement or agreement set up a necessary step in the overall plan. But upon careful consideration, his participation with patrons only made it easier for four soldiers to reach a place where they could engage in sexual activities. Certainly, the crime condemned must be more than that or the driver of a car can be charged with a sexual offense merely because he solicited passengers to pay for transportation to a house of ill fame.

We make the following comment for these are the facts which make the strongest showing for the Government. The accused had advised a trainee that he knew where they "could get some women," and suggested that someone else could be taken along. The trainee in turn interested another trainee. That evening, the trainees and two others were transported by accused and a fellow soldier, whom we will designate as conspirators, in the latter's automobile, to a house of prostitution, some fifty miles distant. On the way, the conspirators accepted ten dollars apiece—five dollars from each of their passengers. At their destination, the accused and his henchman stayed outside and waited while the four soldiers they had transported entered the house and had sexual intercourse with one of the prostitutes there. Afterward, the recruits were driven back to camp. In the light of these facts and the stipulation by the Government, accused had nothing to do with arranging for the sexual intercourse of the soldiers with a prostitute. Without some prior agreement, that matter was not settled until after the soldiers went into the house.

That there was a disorder is apparent from the evidence. The soldiers were all trainees and had no authorization to leave the post on the night in question. One was performing guard duty when picked up by the group. They were spirited off the post and it is extremely unlikely that the trainees could have successfully arranged such departure without the accused's aid. They were driven directly to the house of prostitution and after the sexual activities had ended they were returned to camp.

Merely to find a disorder from the facts proven does not end our problem. It is just the beginning for it is necessary that the disorder established must be the one alleged. Here, when we give the Government the benefit of all allegations and the reasonable inferences deducible therefrom, we find the specification states a disorder based on an arrangement to aid persons in committing sex offenses. Clearly, other disorders such as soliciting a soldier to leave post without authority, aiding another to leave his duty station or even soliciting soldiers to enter a house

of prostitution are neither fairly pleaded nor lesser included within the offense set out in the specification.

It should be apparent that under the peculiar facts of this case, ▆▆▆▆▆ if no substantive offense comparable to pandering is established, the finding on conspiracy must fail. The object of the conspiracy was alleged to be pandering and, if it is unsupportable by the record, an essential element of the conspiracy is not established. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.