**UNITED STATES**

v.

**Master Sergeant Elbert L. LINNEAR, FR 438–72–2829 United States Air Force.**

**ACM 23807.**

U.S. Air Force Court of Military Review.

30 June 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens, Major Richard A. Morgan, and Captain G. Michael Lennon, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Kathleen A. McGah, USAFR.

Before HODGSON, HEMINGWAY and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The accused's conduct with a cashier at a base exchange branch and a subordinate in the security police squadron resulted in his conviction by military judge alone of pandering, soliciting another to commit prostitution and sodomy in violation of Articles 134 and 125, U.C.M.J., 10 U.S.C.A. §§ 934 and 925. The approved sentence extends to a bad conduct discharge, confinement at hard labor for 16 months and reduction to airman first class.

### I

The accused argues there is insufficient evidence to support his conviction for pandering and soliciting another to commit prostitution. This assignment of error requires some discussion of the facts. The evidence at trial is in general agreement, with the accused contending that the women misunderstood the tenor of his conversations with them.

■ The record established that Senior Airman H. was a security policewoman and the accused was her flight chief. During early fall of 1981, H was in the accused's office. There they discussed her future goals and what she wanted out of life. H responded that she "liked nice cars" and "wanted to have a lot of nice things." The accused asked her if she "had to be in love with someone to go to bed with them." H was offended by the question and told the accused she thought he was referring to prostitution. The accused denied this, and indicated he was discussing an escort service he planned to start.

We find the facts supporting this specification to be insufficient to affirm a conviction for soliciting another to commit prostitution. The term "solicitation" means any statement or act which may be understood to be a *serious request* to commit an offense. H repeatedly stated she believed the accused when he denied he was suggesting that she engage in prostitution. In summary, we are not convinced beyond a reasonable doubt of the accused's guilt. Accordingly, Specification 2 of Charge I is set aside and ordered dismissed.

■ As to the pandering allegation, there is ample evidence to support the conviction. B E was a cashier at the base exchange snack bar located in the basement of the headquarters building. She met the accused during February—March 1982, and their conversation drifted toward the pasttime of "fooling around." A week later they again met at the snack bar and the accused suggested that she could make extra money by becoming "one of his girls"; B E understood this to mean being a prostitute. The accused indicated that this would include both oral and group sex. Subsequently they discussed money arrangements which the accused said would be divided "60/40." Sometime during the later part of March the accused came to the snack bar just as B E was getting ready to open. She closed the door, placed a sheet of paper over the wire opening in the door, and committed fellatio on the accused.

Later, B E told the Office of Special Investigations (OSI) of the incident in the snack bar and the accused's overtures that she become a prostitute. She agreed to meet him at her apartment and to allow law enforcement officials to record their conversation. The transcript established that the accused came to her apartment on 31 March 1982. He suggested there was money to be made with the sale of photographs, i.e., two to four dollars for a set of three. He indicated she would receive 40 percent of the money that she got from the "tricks." [1] The "tricks" would include both

1. A "trick" is a professional engagement of a prostitute. Webster's Third New International Dictionary 2442, 1969.

men and women. He asked her to undress, which she did.

At trial and on appeal the accused urges that his conversations with B E were "sexual games or fantasies" between lovers, and he never intended to entice her into being a prostitute. To "entice" means to wrongfully solicit, persuade, procure, allure, attract, draw by brandishment, coax or seduce. *United States v. Brown,* 8 U.S.C.M.A. 255, 24 C.M.R. 65 (1957). The accused's conduct meets almost every meaning of the term. His denial as to intent is a question for the fact finder—in this case the trial judge. By his finding of guilty the trial judge indicated his belief that the accused's purpose was to entice B E into being a prostitute. We concur in that assessment. *See generally, United States v. Harris,* 8 M.J. 52 (C.M.A.1979).

## II

■ At trial and on appeal the accused concedes that he and B E engaged in fellatio in a base exchange snack bar during March 1982. However, citing state and federal decisions,[2] he argues that this was an act committed in private with a consenting adult and, since constitutionally protected, may not serve as the basis for a criminal prosecution. Assuming, *arguendo,* that Article 125, U.C.M.J. does not apply to heterosexual sodomy between consenting adults in private, we are not prepared to say that such conduct here was "private" where it occurred in a business establishment open to the general public. In fact there were customers in the outer area waiting for the snack bar to open. That the act took place behind a closed door with a sheet of paper over a wire opening in the door does not make it "private." Under these circumstances the accused has no basis to claim that his privacy has been invaded. *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978); *United States v. Jones,* 14 M.J. 1008 (A.C.M. R.1982).

**2.** *Griswold v. Connecticut,* 381 U.S. 479, 494, 85 S.Ct. 1678, 1687, 14 L.Ed.2d 510 (1965);

## III

■ Finally, the accused maintains that it was prejudicial error for the military judge to impose sentence without first informing the parties what he considered the maximum punishment to be. We disagree. In a bench trial, the military judge is not required to advise counsel as to the maximum punishment imposable before inviting argument as to sentence. *United States v. Marshall,* 3 M.J. 1047 (A.F.C.M.R.1977); *pet. denied* 6 M.J. 104 (C.M.A.1978). However, it is the better practice to do so and we strongly suggest that military judges follow such a procedure.

The remaining findings of guilty are affirmed. Reassessing the sentence in light of the dismissed specification, the offenses affirmed, and the entire record, we find appropriate only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for 12 months, and reduction to airman first class.

HEMINGWAY, Senior Judge, concurring in part, dissenting in part:

I agree, with the principal opinion's conclusions concerning Specification 2 of Charge I and the Specification of Charge II. However, I am not convinced beyond a reasonable doubt that the accused is guilty of pandering as is alleged in Specification 1 of Charge I. The testimony of the complaining witness, B E, on cross-examination convinces me that she was the moving party in the conversations with the accused concerning sexual relations and potential prostitution. It is apparent that she was interested in sexual relations with the accused and was extremely aggressive in pursuit of that goal. The statements of the accused, when considered in a vacuum, lend credence to the government's allegations. When viewed against the background of B E's testimony on cross-examination, the accused's statements may best be characterized as "jive" talk that falls short of criminality.

*People v. Onofre,* 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980).

I also wish to address the simplistic comment in my fellow judge's concurring opinion that "[a] criminal activity continues to be criminal whether done in public or private." It has long been settled law that the situs of an act may well determine its innocence or criminality. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *United States v. Caune,* 22 U.S.C. M.A. 200, 46 C.M.R. 200 (1973). The principal opinion properly avoids a determination of whether heterosexual sodomy between consenting adults is protected by the constitutionally based right of privacy. A Base Exchange Snack Bar scarcely qualified as "private."

MILLER, Judge, concurring in part, dissenting in part:

## SODOMY

I agree with the majority's conclusion that the sodomy conviction should be affirmed. An act of fellatio continues to constitute an offense in military jurisprudence violative of Article 125, U.C.M.J., whether it occurs in public or private.[3]

Unless one of the elements of a criminal activity relates specifically to the situs of that activity, that activity continues to be criminal whether done in public or in private. A murderer who commits a murder in the sanctity of his own bedroom may, nevertheless, be charged with murder. A sodomist who commits an act of sodomy in the sanctity of his own bedroom may, nevertheless, be charged with sodomy. Certainly, a sodomist who commits an act of sodomy behind a gerryrigged piece of paper in a base exchange snack bar may, also, be charged with sodomy.[4]

## PANDERING

I also agree with the lead opinion's conclusions that Charge I, Specification 1,[5] properly alleges an offense of Pandering, prejudicial to good order and discipline under Article 134, and that the record of trial contains sufficient evidence to support the accused's conviction as to this allegation. I disagree, however, with the lead opinion's holding that the trial record contains insufficient evidence to support the accused's conviction of Charge I, Specification 2.[6] Perhaps because I, alone, perceive the language of this second specification to constitute a second allegation of pandering, which, contrary to the general rules of evidence, allows me to consider the similar offense alleged in Specification 1 as evidence of the accused's intent in Specification 2, I am also convinced of the accused's guilt as to this specification.

---

**3.** Even should military jurisprudence eventually accept the commonly held civilian notion that such acts, when occurring in the privacy of the nuptial bedroom, should not constitute the basis of a criminal charge, the clear prejudice to good order and discipline that would result from allowing *non-married* service members to mutually engage in such activities, even though they be consensual and private, would undoubtedly continue to constitute a criminal offense, whether this offense be chargeable specifically under a modified version of Article 125, or generally, as prejudicial to good order and discipline, under Article 134.

**4.** Senior Judge Hemingway, writing separately, cites *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), as his authority for describing the simple truism I have attempted to convey in this paragraph, as "simplistic comment." While from time to time a criminal statute may be held unconstitutional, as it was in *Stanley,* I do not regard my failure to consider the possibility of such a rare and unfore-

seeable eventuality, when stating this truism, as reducing its validity to "simplistic comment."

**5.** In that MASTER SERGEANT ELBERT L. LINNEAR, United States Air Force, 343d Security Police Squadron, did at Eielson Air Force Base, Alaska, and North Pole, Alaska, on diverse occasions between on or about 1 March 1982 to on or about 31 March 1982, wrongfully and unlawfully attempt to entice ... [E] to engage in acts of prostitution with persons to be directed to her by the said Master Sergeant Elbert L. Linnear.

**6.** In that MASTER SERGEANT ELBERT L. LINNEAR, United States Air Force, 343d Security Police Squadron, did at Eielson Air Force Base, Alaska, between on or about 1 September 1981 and on or about 31 October 1981, wrongfully solicit Senior Airman ... [H] to commit prostitution by engaging in indiscriminate sexual intercourse for her personal gain.

THE OFFENSE.

Although the act of pandering is neither specifically prohibited nor described in the U.C.M.J., both the Table of Maximum Punishments and Appendix 6 of the M.C.M., 1969 (Rev.) recognize it as an offense prejudicial to good order and discipline under Article 134. The Table of Maximum Punishments provides that punishment for the Article 134 offense of pandering will not exceed a dishonorable discharge, 5 years confinement at hard labor, total forfeitures of pay, and reduction to the lowest enlisted grade. Appendix 6, at model specification numbers 166 and 167, indicates that pandering consists of wrongfully and unlawfully either: (1) enticing or attempting to entice a second person to engage in acts of prostitution with third persons to be directed to that second person by the (attempted) enticer (model specification number 166), or (2) arranging for second parties to engage in sexual acts with a prostitute (model specification number 167).[7]

*Charge I, Specification 1.*

Apparently, since Charge I, Specification 1, of the instant charge sheet is patterned after the former of these two model specifications, my fellow judges perceive no reason to discuss the issue of whether it adequately states an offense of pandering. While I agree with the lead opinion's ultimate conclusion that the specification does successfully state this offense, because the particular "attempt" variation of the form used in drafting this specification not only remains untested by the Court of Military Appeals, but was implicitly questioned by that Court in *United States v. Gentry*, 8 U.S.C.M.A. 14, 23 C.M.R. 238 (1957), I shall separately set forth the rationale underlying my own view on this matter.

After comparing the then existing District of Columbia Code's pandering statute with the elements set forth by model specification 156 (which, although since renumbered as model specification 166, is the identical model specification upon which Charge I, Specification 1, here, was patterned), the Court in *Gentry, Id.,* at 14, 23 C.M.R. at 241, decided that "the thrust of model specification 156," emphasizes the act of "arranging with a female." Looking to Webster's New International Dictionary, 2d ed, page 152, the court then quoted the following definition of "arrange":

> To adjust or settle; sep., to settle by prior agreement or plan; ... To come to an agreement, understanding, or settlement; esp., to agree or settle details in advance; as to arrange about transportation, or for an appointment.

In my mind, if we were to apply this same restrictive interpretation of the thrust of model specification 166 to Charge I, Specification 1, here, we would be forced to conclude that the bare allegation that the accused unsuccessfully attempted to entice E to engage in acts of prostitution with unnamed third parties he would later direct to her, does not state the offense of pandering.

We need not, however, do so.

During the 26 years following *Gentry*, the means used by panderers and prostitutes to ply their traditional wares has changed considerably. No longer are the majority of their activities carried out in structures, commonly recognizable as "houses of ill repute," nor are a majority of prostitutes necessarily ladies of previously tarnished reputations. To the contrary, today, many pandering entrepreneurs entice girls with quite respectable backgrounds to begin committing acts of prostitution for their own personal gain, only so that these modern-day panderers might, later, offer them the "protection," "competitive advantage,"

7. Interestingly, although the M.C.M., 1969 (Rev.) specifically recognizes the act of pandering as an Article 134 offense, it does not so recognize the act of prostitution. This omission is probably attributable both to the limited number of women in the Air Force when the manual's specification forms were originally drafted and cumulative oversights in revisions since that time. I am, nevertheless, convinced that an act of prostitution, being both service discrediting and prejudicial to good order and discipline, most certainly constitutes a chargeable offense under Article 134.

or "cover" of the professional "escort" or other service they will conveniently supply for a percentage of her "take."

Somewhat more surprisingly, society, both through its courts and its legislatures, has kept pace with these changes by broadening its definitions of the crime of pandering so as to encompass these new pandering activities.

In a recent decision, the Supreme Court of Iowa extensively reviewed decisions of other state courts which supported its holding that an act of prostitution is not an element of a newly enacted Iowa statute that provides a person who persuades or arranges for another to become a prostitute commits the class "D" felony of pandering:

> The obvious purpose of section 725.3, when read in its entirety, is to prevent the spread of prostitution by imposing punishment for those individuals who encourage commission of the crime. Since the statute is preventive, it would be anomalous for the legislature to require commission of the crime it sought to discourage. Accordingly, we hold that the legislature in using the terms "persuades" or "arranges" did not intend to require an act of actual prostitution as an element of the offense of pandering.

> .     .     .     .     .

Our holding is supported by other authority. One commentator states:

> Under statutes which provide that it shall be unlawful to invite, solicit, or procure a female to have unlawful sexual intercourse, the solicitation constitutes the offense, even though the solicitation is unsuccessful, or no illicit intercourse results from the solicitation, since the gist of the offense is not alone the practice of prostitution, but also the spread of prostitution. The woman is not an accomplice, although she consents.

73 C.J.S. Prostitution para. 7(b) (1951) (footnotes omitted). And other jurisdictions with comparable statutes prohibiting pandering or similar offenses hold that the crime is committed when the inducement is attempted and that an act

of prostitution need not occur. *See, e.g., People v. Bradshaw,* 31 Cal.App.3d 421, 425, 107 Cal.Rptr. 256, 259 (1973) (under statute defining pandering as using any device to cause, induce, persuade, or encourage another to become prostitute, act of prostitution not necessary element of offense proscribed by word "encourage"); *People v. Madison* 93 Ill.App.3d 922, 924, 49 Ill.Dec. 549, 418 N.E.2d 193, 194 (1981) (under statute defining pandering as arranging or offering to arrange situation in which female may practice prostitution, it is activity itself and not success thereof that is prohibited); *State v. Wood,* 34 Or.App. 569, 573, 579 P.2d 294, 296 (1978) (purpose of statute prohibiting inducing or causing person under eighteen years of age to engage in prostitution is to prevent prostitution, and one who provides *opportunity* to engage, persuades or prevails upon such person is guilty of offense); *State v. Gates,* 118 Utah 182, 186, 221 P.2d 878, 880 (1950) (success not necessary component of statute that prohibited inducing, persuading, encouraging, inveigling, or enticing female to become prostitute: "It is the act of encouragement, persuasion or inveiglement which is forbidden").

*State v. Williams,* 315 N.W.2d 45 (Iowa 1982). *See, also, State v. Rodgers,* 134 Ariz. 296, 655 P.2d 1348 (1982); *Jessie v. State,* 648 P.2d 46 (Okl.Cr.1982); *Arnold v. State,* 163 Ga.App. 10, 293 S.E.2d 501 (Ga.App. 1982); *State v. Johnson,* 632 S.W.2d 33 (Mo. App.1982); *People v. Springs,* 101 Mich. App. 118, 300 N.W.2d 315 (1980); *Sheriff v. Hilliard,* 96 Nev. 345, 608 P.2d 1111 (1980).

More pertinent to our consideration, here, in 1973, the United States Congress, responding similarly to the changing methodology of panderers, rewrote the District of Columbia pandering statute referenced by the Court of Military Appeals in *Gentry,* redefining the offense of "pandering" so as to make its required elements duplicative of the elements set forth by M.C.M., Appendix 6, model specification 166, less one.

§ 22–2705. *Pandering; inducing or compelling female to engage in prostitution.*

Any person who, within the District of Columbia shall ... compel, induce, entice, or procure or attempt to compel, induce, entice, or procure -... [a female] to engage in prostitution ... shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 5 years and by a fine of not more than $1000.00.

D.C.Code 1973, § 22–2705.

Accordingly, I am convinced that time has overtaken the rationale which underlaid the restrictive implications in *Gentry,* regarding the sufficiency of the "attempt" variation of model specification 166 (then, model specification 156) to state an offense properly defined as pandering. Today, the Court of Military Appeals would rule, as we have, here, that the "attempt" variation of model specification 166, does, in fact, set forth all elements necessary for a conviction of this offense.

### Charge I, Specification 2.

Turning, in this same vein, to an examination of the sufficiency of Charge I, Specification 2, to state an offense, I am likewise convinced that this specification adequately states an Article 134 offense properly defined as pandering.

As I just noted in my discussion of Charge I, Specification 1, Congress has recently re-defined its perception of this offense so as to include within its definition conduct consisting solely of an attempt to induce or entice a female to engage in prostitution.

This is exactly the conduct that Charge I, Specification 2, alleged against the accused; to wit: "that ... [he] did ... wrongfully solicit Senior Airman ... [H] to commit prostitution by engaging in indiscriminate sexual intercourse for her personal gain."

Webster's New International Dictionary, 3rd ed., defines the word "solicit" as:

...: to entice or lead astray by or as if by specious arguments: lure on and esp.

into evil ...: to induce ... by means of ... [some natural] influence ...: to seek to affect (as by ... inducing ...) usu. by mild or gentle means ...: to serve as a temptation or lure to...

*Id.,* at 2169. It defines the word "prostitution" as:

...: the act or practice of indulging in promiscuous sexual relations esp. for payment...

*Id.,* at 1822. And, it indicates that the word "promiscuously" is synonymous with the word "indiscriminately." *Id.,* at 1815.

Substituting these definitions for their corresponding words in Charge I, Specification 2, and eliminating those words from this Charge and Specification which are superfluous by reason of definitional repetition, I find that it simply charged the accused with wrongfully inducing or enticing Senior Airman H, a female, to engage in prostitution. By federal statutory definition, then, Charge I, Specification 2, like Charge I, Specification 1, properly charged the accused with pandering, an offense recognized by the M.C.M.'s Table of Maximum Punishments as being clearly violative of the U.C.M.J., Article 134, prohibition against service members engaging in conduct prejudicial to good order and discipline within the armed forces.

### THE EVIDENCE.

The evidence at trial establishes that the accused, who was H's flight chief and who, pursuant to Specification 1, also solicited a second girl (E) to commit prostitution, engaged H in a conversation within the confines of his duty office. Although this conversation initially related to H's military duties, the accused turned the discussion to H's future goals. After H had mentioned her desire for an education, the accused complimented her on the way she dressed and carried herself. The conversation then turned to H's desire for nice clothes, nice cars, and other nice things in life. At this point the accused spent about 15 minutes telling her "that there were ways to obtain the things that ... (she) wanted in life ... such as dealing with certain people—people

who had these things—people who could give ... (her) these things, and being able to relate to those people and tolerate them." The accused also asked her if she had to be in love with someone to go to bed with them. The accused's demeanor throughout this period was such as to cause H to be offended and to vocally remonstrate her military supervisor and superior for suggesting that she engage in prostitution. The accused responded that he was not suggesting prostitution, but rather activities as a "socialite" or "escort," to which H retorted, "it mean(s) the same thing to me, as far as I ... (am) concerned. It's one in the same, and I ... (don't) want anything to do with it, whatever it ... (is)."

Believing that, in the common parlance of our nation, the terms "escort" or "escort service" in conversational contexts such as that described above have become socially acceptable synonyms for the terms "prostitute" or "prostitute service," [8] I do not view the accused's substitution of the words "socialite" or "escort" for H's word "prostitute" as a denial that H properly understood his intent, as the majority has apparently done. Instead, I view the accused's substitution of these term, as constituting an oral affirmation that H did, in fact, correctly interpret the reason he had made these remarks.

Regardless of the objective meaning of these terms, however, I also believe that this evidence is sufficient to establish that the accused, subjectively, intended to transmit to H, at least the pertinent and critical part of, the identical message he objectively transmitted to E; to wit: that she should engage in prostitution to obtain the additional money that he knew she desired.

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Mil.R.Evid. 404(b).

Because panderers almost invariably solicit multiple females to engage in prostitution, generally, evidence as to specific previous and subsequent similar activities on the part of an accused is admissible against him as tending to show a general plan, scheme, or design of pandering. *See, People v. Bell,* 138 Cal.App.2d 7, 291 P.2d 150 (1955); *People v. Quock Wong,* 128 Cal.App.2d 552, 275 P.2d 778 (1952). *See, also, Alford v. Hawaii,* 205 F.2d 616 (9th Cir.1953); *People v. Black,* 241 Cal.App.2d 602, 50 Cal.Rptr. 802 (1966); *Threlkeld v. State,* 165 Tex.Cr.R. 93, 304 S.W.2d 123 (1957); *Commonwealth v. Gatto,* 154 Pa.Super. 25, 34 A.2d 840 (1943); *Boyle v. State,* 110 Ark. 318, 161 S.W. 1049 (1913). Certainly this same evidentiary concept is applicable in military courts-martial, today, under Mil.R.Evid. 404(b).

The circumstances surrounding the accused's solicitation of E to engage in prostitution, and, in particular, his implicit admission to her that he had previously successfully solicited more than one other girl for this purpose, tends to demonstrate a general plan, scheme, or design to commit the charged offense and is certainly material to the accused's motive and intent when he, similarly, solicitated H to engage in prostitution.

### CONCLUSION

I would affirm all of the findings and the sentence, below.

**8.** For instances in which other courts have recognized such vernacular, *see, People v. Mason,* 642 P.2d 8 (Colo.1982); *People v. Madison,* 93 Ill.App.3d 922, 49 Ill.Dec. 549, 418 N.E.2d 193 (1981); *City of Yakima v. Emmons,* 25 Wash. App. 798, 609 P.2d 973 (1980); *State v. Conner,* 585 S.W.2d 294 (Mo.App.1979); *People v. Municipal Court, City and County of San Francisco,* 89 Cal.App.3d 739, 153 Cal.Rptr. 69 (1979); *Pope v. State,* 365 So.2d 369 (Ala.Cr.App.1978).